

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---
### NO. PD-0735-10
---

**THE STATE OF TEXAS**

**v.**

**ABRAN ELIAS, Appellee**

---
### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE EIGHTH COURT OF APPEALS
### EL PASO COUNTY
---

PRICE, J., delivered the opinion of the Court in which MEYERS, KEASLER, HERVEY and COCHRAN, JJ., joined. KELLER, P.J., filed a concurring opinion. WOMACK and JOHNSON, JJ., dissented.

### O P I N I O N

In this felony prosecution for possession of marihuana, the State appealed from the trial court's grant of the appellee's motion to suppress evidence that the appellee contended was obtained as a result of an illegal traffic stop. The El Paso Court of Appeals affirmed the trial court's ruling in an unpublished opinion, holding that the appellee's initial detention was not justified by specific articulable facts to show that a traffic violation occurred, and that the

search could not be otherwise justified by the fact that, after the initial stop, the appellee was found to have an outstanding arrest warrant that might give rise to a valid search incident to arrest because by the time the search of the vehicle was conducted, the appellee had been secured in the back of a squad car.[1] We granted the State's petition for discretionary review to examine both holdings and now vacate the judgment of the court of appeals and remand for further proceedings.

## FACTS AND PROCEDURAL POSTURE

### Motion to Suppress

The appellee was indicted for the offense of possession of more than 2000 pounds of marihuana, essentially a first degree felony carrying the possibility of an enhanced fine.[2] Prior to trial, the appellee filed a motion to suppress evidence stemming from his detention in this case and a pretrial hearing was conducted. Only one witness testified at the pretrial hearing, El Paso County Sheriff's Deputy Eduardo Sanchez, Jr.

Sanchez testified that he was a K-9 officer assigned to the metro narcotics task force. At around 1:00 p.m. on September 7, 2007, Sanchez was "driving around" with his narcotics-

---

[1]
State v. Elias, No. 08-08-00085-CR, 2010 WL 1478909 (Tex. App.—El Paso, delivered April 14, 2010) (not designated for publication).

[2]
See TEX. HEALTH & SAFETY CODE § 481.121(a) & (b)(6) ("a person commits an offense if the person knowingly or intentionally possesses a usable quantity of marihuana[, an offense] punishable by imprisonment . . . for life or for a term of not more than 99 years or less than 5 years, and a fine not to exceed $50,000, if the amount of the marihuana possessed is more than 2000 pounds.").

sniffing dog when he received a radio call from Detective Benjamin Perales. Perales advised Sanchez to be on the lookout for a white cargo van that Perales suspected "was possibly loaded with narcotics." At around 2:00 p.m., Sanchez was traveling about fifty miles per hour, northbound on Zaragosa, when he approached a street to his left that terminated at Zaragosa, Sombra del Sol. Before reaching the intersection, Sanchez noticed a white Chevy van, "positioned and in a situation where it would have to make a right hand turn" from Sombra del Sol onto Zaragosa. As he approached the van, Sanchez noticed "that it [didn't] have any signal directions whether either turning right or left." Sanchez passed the van and then observed it make a right turn onto Zaragosa, heading south. Turning around on Zaragosa, Sanchez conducted a traffic stop of the van "[b]ecause it failed to signal a right turn from the stop."

The appellee was alone in the van. He appeared to Sanchez to be nervous, having attempted to get out of the driver's seat before he had even unfastened his seat belt. Though he had no driver's license or proof of insurance, the appellee was able to produce a Texas ID card with the correct name, date of birth, and a photo. When Sanchez asked the appellee why he appeared so nervous, the appellee replied, "Well, I think I have some warrants." Sanchez confirmed with his dispatcher that this was in fact the case; the appellee had warrants out "for a disregarded stop sign, failure to appear and failure to maintain financial responsibility." Sanchez then advised the appellee that he had been stopped for failing to signal a turn, and the appellee "agreed that he had not signaled." By this time, another deputy had arrived on

the scene, and the appellee was placed under arrest. Knowing that this could be the van that Perales suspected of containing narcotics, Sanchez "got [his] canine out of [his] unit and ran an exterior K-9 sniff of the vehicle." The drug dog alerted at both the driver's side window, which was rolled down, and at the rear double doors of the van. Sanchez then entered the van and found approximately 300 pounds of marihuana in duffle bags and boxes. From the initial traffic stop to the discovery of the marihuana, Sanchez estimated, only a period of twenty minutes elapsed. Subsequently, a search warrant was obtained for the appellee's residence where police found the balance of the 2000 pounds of marihuana.

On cross-examination, Sanchez first admitted that he had said nothing in his offense report about the appellee actually admitting that he failed to signal a right turn. Next, the following critical exchange occurred between Sanchez and defense counsel:

> Q. All right. Now, you testified that you passed [the appellee] while he was stationary in a lawful stop – you passed him on Zaragosa. He was stationary at Sombra del Sol?
>
> A. Uh-huh.
>
> Q. Now, you passed him?
>
> A. Uh-huh.
>
> Q. And you moved on on Zaragosa. How far did you move down when you observed the failure to signal intent?
>
> A. How far did I move down after – I'm sorry.
>
> Q. Yes.
>
> A. What was the question?

Q. You passed him?

A. Uh-huh.

Q. And he was stopped. He was stationary on Sombra del Sol?

A. Uh-huh.

Q. Am I correct?

A. Yes.

Q. All right. Then, you passed him. How far did you travel down Zaragosa?

A. About maybe 30 yards.

Q. 30 yards?

A. Yes, sir.

Q. And you were able to see from 30 yards back that he made his right turn onto Zaragosa –

A. Yes, sir.

Q. – without signaling intent?

A. Yes, sir.

Q. Sir?

A. I saw that there was no turning signal when I passed him. As soon as I passed him, he had –

Q. Now, listen to my question now. You passed him?

A. Uh-huh.

Q. He was stationary?

A. Uh-huh.

Q. He hadn't initiated his right turn –

A. Right.

Q. – onto Zaragosa?

A. Uh-huh.

Q. And you passed him?

A. Uh-huh.

Q. And you were proceeding down Zaragosa south, I believe?

A. No. It was –

Q. Going north?

A. Yes, sir.

Q. All right. You were north. And you're saying that you – from that vantage point, you saw him from a stationary position fail to signal intent?

A. Okay. I –

Q. Yes or no? That's all.

A. Well, it's because the question you're asking me, sir, I can't –

Q. Well, did you see him, Officer? You had passed him. You testified to that.

A. Yes, yes.

Q. You passed him –

A. Uh-huh.

Q. – and he was stationary. He hadn't committed a ticketable offense yet, had he?

A. No. He was stationary.

Q. All right. You passed him. You proceeded 30 yards away on Zaragosa.

A. Uh-huh.

Q. Now, how is it that you saw him fail to signal intent from your vantage point?

A. I didn't.

Q. You didn't?

A. No.

The prosecutor immediately took Sanchez on redirect, however, and had him testify that he was aware that Texas law requires a motorist to signal for at least "[a] hundred feet" before making a turn.[3] Not to be outdone, defense counsel then countered on re-cross:

Q. But your ticketable offense, Officer, is not that he failed to signal within a hundred feet – that he failed to signal intent to make a right turn. That's what you've stated in your [warrant affidavit for the search of the residence] and your [offense report].

A. Uh-huh.

Q. Sir?

---

[3] *See* TEX. TRANSP. CODE § 545.104(a) ("An operator shall use [a turn signal] to indicate an intention to turn, change lanes, or start from a parked position.") & (b) ("An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn.").

A. Yes.

The trial court then interposed a question, apparently asking Sanchez to clarify whether the appellee had been within a hundred feet of making his turn when Sanchez observed him without a turn signal:

> THE COURT: Officer, when you decided to pass the defendant, how close were you to the turn, the making of the turn that you're saying that he did not signal? Was it within a hundred feet?
>
> THE WITNESS: Oh, yes, ma'am.

With this, Sanchez's testimony came to a close.

In his summation to the trial court, the appellee stressed Sanchez's admission that he had not seen whether the appellee may have been signaling a turn at the moment at which he turned right from a stationary position because by that time Sanchez had already passed by the intersection. There was therefore no evidence, the appellee argued, that the appellee committed the particular traffic infraction that Sanchez purported to stop him for. As for any failure on the appellee's part to signal a turn within a hundred feet of the intersection, the appellee argued that this proposition was "speculative at best"—apparently because the appellee was stationary when Sanchez observed him failing to signal a turn, rather than moving.[4] The State replied, first of all, that because Sanchez was able to see that the appellee

---

[4] Turning to the proposition that Sanchez *at least* observed the appellee fail to signal his intention to turn continuously for the last 100 feet before the intersection, defense counsel specifically argued: "Well, how does [Sanchez] know that, Your Honor? [The appellee]'s stationary there at the stop. He's in complete compliance with the law. [Sanchez] passes him and he testifies that he doesn't see a ticketable offense, Your Honor."

did not have his turn signal on—at least as he sat stationary at the intersection—"therefore, he did violate the law." Moreover, the State argued, once Sanchez discovered that the appellee had warrants out for his arrest, the search that came after the appellee was arrested pursuant to those warrants was not the fruit of any illegality stemming from the initial detention because the warrants would attenuate the taint of any such initial illegality. For this proposition, the State cited, *inter alia*, *Reed v. State*.[5]

The trial court took the case under advisement. Prior to the trial court's ruling, the appellee filed a memorandum of law in which he argued that Sanchez had admitted that he failed to witness a "ticketable offense," and that the offense that Sanchez had declared in his police report that he stopped the appellee for, failure to signal a turn at all, was not supported by articulable facts, since Sanchez admitted he had not actually seen whether the appellee was signaling at the moment he executed the turn. The trial court subsequently entered written findings of fact and conclusions of law.[6] The pertinent findings of fact are as follows:

> 2. Deputy Sanchez passed the van going approximately 50 miles per hour and drove 30 yards north on Zaragosa, then turned around and conducted a traffic stop of the van, that was traveling south on Zaragosa, for the driver's alleged failure to signal an intent to make a right turn at the intersection.

---

[5] 809 S.W.2d 940 (Tex. App.—Dallas 1991, no pet.).

[6] *See State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006) (on request of losing party, trial court is required to enter express findings of fact and conclusions of law).

3.  Deputy Sanchez testified that he did not see the [appellee] fail to signal intent to turn right from his vantage point as he proceeded 30 yards away on Zaragosa.

* * *

5.  Deputy Sanchez determined that [the appellee] had prior outstanding warrants for a disregarded a stop sign, failure to appear, and failure to maintain financial responsibility, and placed [the appellee] under arrest.

* * *

7.  Deputy Sanchez testified that knowing the van might possibly contain illegal narcotics, he had his certified canine . . . conduct an exterior "sniff" of [the appellee's] vehicle.

8.  The canine alerted to the odor of narcotics on the driver's side window and the rear double doors of the van.

In its conclusions of law, the trial court held:

1.  Deputy Sanchez had no reasonable suspicion or probable cause to believe that [the appellee] had committed a traffic violation in his presence while [the appellee's] vehicle was stopped at the intersection of Sombra del Sol and Zaragosa, in El Paso County, Texas.

2.  The Court finds no reasonable suspicion to believe that the traffic violation charged occurred.

3.  The subsequent warrantless arrest of [the appellee] and the search of his vehicle, not supported by probable cause or reasonable suspicion of criminal activity, was illegal.

Based on these findings and conclusions, the trial court granted the appellee's motion to suppress any evidence obtained in the search of the van.[7] The trial court failed to rule on the

---

[7] The trial court expressly declined to rule on the admissibility of the marihuana that was discovered in the search or the appellee's residence, however.

State's alternative argument that the appellee's outstanding arrest warrants attenuated the taint of any illegality with respect to the initial traffic detention, such that the exclusionary rule should not apply.

### In the Court of Appeals

The State appealed.[8] In its appellate brief, the State advanced two claims. First, the State argued that Sanchez had at least a reasonable suspicion to justify his initial detention of the appellee and that the K-9 alert then supplied probable cause to justify his search of the van. Secondly, the State maintained, as it had at the motion to suppress hearing, that even assuming that the initial detention was unlawful, Sanchez's discovery of the outstanding warrants for the appellee's arrest attenuated the taint of any initial illegality, authorizing the appellee's arrest and Sanchez's search of the van incident to that lawful arrest.

The court of appeals rejected both arguments. With respect to the first argument, the court of appeals upheld what it took to be the trial court's ruling that, "[b]ecause Officer Sanchez did not see [the appellee] commit any traffic violations, he failed to show sufficient specific articulable facts . . . to justify the initial stop[.]"[9] In upholding that ruling, the court of appeals observed: "Officer Sanchez stated that the required distance for a driver to signal their intent to turn right or left by law is 100 feet, *and he did not see any turn signals on [the*

---

[8]

TEX. CODE CRIM. PROC. art. 44.01(a)(5).

[9]

*State v. Elias*, *supra* (slip op. at \*3).

*appellee's] van as he passed the vehicle.*"[10] Turning next to the State's alternative argument, the court of appeals invoked the United States Supreme Court's then-recent opinion in *Arizona v. Gant*,[11] to hold that, even assuming that the arrest warrants would attenuate the taint of an unlawful initial detention, any search incident to the appellee's formal arrest on those warrants was not justified. Because the appellee was not within reach of the interior of the van when he was arrested, the court of appeals reasoned, and because there was no basis for Sanchez to believe that evidence of the particular offenses for which he was arresting the appellee (*viz.*, disregarding a stop sign, failure to appear, failure to maintain financial responsibility) might turn up there, Sanchez was not permitted under the Fourth Amendment to search the interior of the van incident to the appellee's arrest.[12] The court of appeals affirmed the trial court's grant of the appellee's motion to suppress.

We granted the State's petition for discretionary review in order to review both holdings.[13] We now hold that the court of appeals was premature in declaring the initial

---

[10] *Id.* (emphasis added). The court of appeals was mistaken to assert that Sanchez testified that he saw no turn signal "as he passed the vehicle." He plainly testified that he saw no turn signal as he approached and passed the intersection. He just as plainly testified that, once he was thirty yards past the intersection, as he watched the van turn, he could not see whether the van was signaling. *See* n. 25, *post.*

[11] 556 U.S. ___, 129 S.Ct. 1710 (2009).

[12] *State v. Elias*, *supra* (slip op. at *3-*4).

[13] TEX. R. APP. P. 66.3(c).

detention to be illegal, and that it erred to conclude that the search of the van was impermissible under *Arizona v. Gant* without also addressing an alternative argument proffered by the State to justify that search. Accordingly, we will vacate the judgment of the court of appeals and remand the cause to that court for further proceedings consistent with our opinion.

## THE INITIAL DETENTION

### Standard of Review

The appropriate appellate posture for review of a trial court ruling on a pretrial motion to suppress is by now quite well established.

> [1] [T]he appellate courts, including this Court, should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. [2] The appellate court should afford the same amount of deference to trial courts' rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. [3] The appellate courts may review de novo "mixed questions of law and fact" not falling within this category.[14]

When a trial court grants a motion to suppress, the State fails to request explicit findings of facts and conclusions of law, and the trial court makes no express findings of fact and conclusions of law of its own volition, we must presume that the trial court implicitly resolved all issues of historical fact and witness credibility in the light most favorable to its

---

[14] *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000) (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

ultimate ruling.[15]    This includes a presumption that, if the State's evidence was uncontradicted and, if believed, would have supported admission of the evidence sought to be suppressed, the trial court simply chose to disbelieve that uncontradicted testimony.[16] However, "upon the request of the losing party on a motion to suppress evidence, the trial court shall state its essential findings."[17]  By "essential findings" we mean "findings of fact and conclusions of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts."[18]  This requirement assures that appellate resolution of the suppression issue "is based on the reality of what happened [at the trial court level] rather than on [appellate] assumptions that may be entirely fictitious."[19]

In this case, the trial court made explicit findings of fact and conclusions of law that it obviously deemed dispositive of the motion to suppress.  The trial court found that Officer Sanchez was not able to see, from his vantage point thirty yards down the road on Zaragosa, whether the appellee was using his right turn signal at the moment he executed the right turn from Sombra del Sol onto Zaragosa.  This finding is consistent with Sanchez's express

---

[15] *State v. Ross*, *supra*, at 857.

[16] *Id.*

[17] *State v. Cullen*, *supra*, at 699.

[18] *Id.*

[19] *Id.* at 698 (quoting *State v. Ross*, *supra*, at 860 (Womack, J., concurring)).

testimony, suggesting that the trial court believed him—at least in this one particular. In our view, however, the trial court erred to conclude that this particular finding of fact was legally dispositive of the appellee's motion to suppress.

## Analysis

Under the Fourth Amendment, a warrantless detention of a suspect that amounts to less than a full-blown custodial arrest must be justified at least by a reasonable suspicion.[20] A police officer has reasonable suspicion to detain a person if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity.[21] This standard is an objective one that disregards the actual subjective intent or motive of the detaining officer and looks, instead, to whether there was an objective justification for the detention.[22]

---

[20] *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). *See also United States v. Sokolow*, 490 U.S. 1, 7 (1989) ("police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause.") (internal quotation marks omitted); *Brown v. Texas*, 443 U.S. 47, 51 (1979) (same).

[21] *United States v. Sokolow*, *supra*; *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010). *See Terry v. Ohio*, 392 U.S. 1, 21 (1968) ("the police officer must be able to point to specific and articulable facts which, if taken together with rational inferences from those facts, reasonably warrant" an investigative detention).

[22] *See Terry v. Ohio*, *supra*, at 21-22 ("it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure . . . warrant a man of reasonable caution in the belief that the action taken was appropriate") (internal quotation marks omitted); *see also Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007) (in considering

The trial court in this case failed to apply the standard for reasonable suspicion objectively. Instead of asking whether the objective facts would have justified an officer in Sanchez's shoes in detaining the appellee, the trial court asked whether Sanchez's subjective justification for stopping the appellee was legitimate. The trial court seems to have been misled by the appellee's argument that Sanchez's initial traffic stop was only justifiable if he had a reasonable suspicion to believe that the appellee failed to signal a right turn at the moment that he actually turned.[23] But it does not matter whether the objective facts support a detention for the specific offense Sanchez intended to detain the appellee for as long as the facts otherwise objectively support a detention for *some* offense—here, the failure to signal continuously an intention to turn for the last one hundred feet of movement before the turn.[24] It was uncontested—and the trial court did not find otherwise—that Sanchez was able to see, as he approached the appellee's van at the intersection of Sombra del Sol and Zaragosa, that there was no turn signal flashing in the moments *before* the appellee made the turn, when the van was positioned within the last one hundred feet of the intersection.[25] From an objective

---

legitimacy of detention, "[t]he subjective intent or motivations of law enforcement officials is not taken into account").

[23] *See* TEX. TRANSP. CODE § 545.104(a) ("An operator shall use [a turn signal] to indicate an intention to turn, change lanes, or start from a parked position.").

[24] *See id*. § 545.104(b) ("An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn.").

[25] The court of appeals's claim that Sanchez "stated that . . . he did not see any turn signals on [the appellee's] van as he passed the vehicle" is, at best, misleading. *State v. Elias*, *supra* (slip op.

viewpoint, this observation would suffice to support a reasonable inference that the appellee was about to violate Section 545.104(b) of the Transportation Code—which, indeed, he *did* violate when, as Sanchez observed, he shortly thereafter executed the turn. The State is entirely correct that, measured by the appropriately objective legal standard, Sanchez's testimony supports a legal conclusion that there existed at least a reasonable suspicion that a traffic infraction had occurred.

The appellee argues, nevertheless, that we should invoke the *Ross* presumption that the trial court simply disbelieved Sanchez's uncontested testimony that he observed the absence of a turn signal even as he *approached* the intersection. It is true that the trial court's written fact findings do not address this particular credibility question. But we do not deem it appropriate to entertain the *Ross* presumption under these conditions. We think the more appropriate presumption, after *Cullen*, is that the explicit findings of fact that the trial court *did* enter are those it deemed "essential" to its ruling, and that it made no finding of fact whatsoever with respect to other fact or credibility issues because it regarded them (however erroneously) as peripheral or non-essential to its ultimate legal holding. In the only explicit

---

at *3). Sanchez clearly testified on direct examination that, as he was "approaching" the van, he noticed "that it doesn't have any signal directions whether either turning right or left." That he later acknowledged on cross-examination that, once he had *passed* the van, he could no longer see whether it was signaling a turn does not mean that at no point did he ever see that the van was not signaling a turn within one hundred feet of the intersection. The trial court's finding of fact was explicitly that Sanchez testified that "he did not see [the appellee] fail to signal intent to turn right *from his vantage point as he proceeded 30 yards away on Zaragosa*." It is clear from Sanchez's testimony that by this time he was well *past* the position of the appellee's van at the intersection of Sombra del Sol and Zaragosa. This does not conflict with his earlier, uncontested assertion that he saw no turn signal as he approached and passed the intersection.

finding of fact bearing on the issue of Sanchez's credibility, the trial court seems to have accepted Sanchez's testimony that he was not able to observe whether the turn signal was on at the moment the appellee turned. The record presents no reason for us necessarily to conclude that the trial court did not also believe the *balance* of Sanchez's uncontroverted testimony—that he was able to observe, at least at *some* point *before* he was thirty yards past the intersection, that the appellee did not have his turn signal on. There is no reason to think that the trial court's ultimate ruling was contingent on some selective credibility determination that it did not bother to spell out in its written findings of fact. Instead, it is evident that the trial court simply failed to make a finding of fact with respect to the credibility of Sanchez's assertion that he saw, as he approached and passed the intersection, that the van was not signaling an intention to turn.

In the absence of a specific finding of fact with respect to whether the van was signaling an intention to turn at the moment Sanchez was approaching and passing the intersection, we think the court of appeals should not have upheld the trial court's ruling that the initial detention was illegal. Instead, consistent with *Cullen*, the court of appeals should have remanded the cause to the trial court for entry of additional, specific findings of fact with respect to this dispositive issue.[26] It is true that, unlike in *Cullen*, the record in the instant case does not reveal that the losing party requested the trial court to make express

---

[26] *See* 195 S.W.3d at 698 ("Rule 44.4 [of the Texas Rules of Appellate Procedure] authorizes the court of appeals to remand the case to the trial court so that the court of appeals is not forced to infer facts from an unexplained ruling.").

findings of fact and conclusions of law. But we think that the trial court, once having taken it upon itself to enter specific findings and conclusions *sua sponte*, nevertheless assumed an obligation to make findings and conclusions that were adequate and complete, covering every potentially dispositive issue that might reasonably be said to have arisen in the course of the suppression proceedings.[27] From the testimony and argument that was developed during the suppression hearing, as summarized above, the trial court was on notice that the question whether the appellee activated his turn signal within a hundred feet of the intersection was potentially dispositive of the legality of his initial detention, yet it failed to make any express finding with respect to this issue.

Under these circumstances, the court of appeals should have remanded the cause to the trial court. The omission of findings and conclusions with respect to this potentially dispositive fact issue constitutes a "failure . . . to act" for purposes of Rule 44.4 of the Rules of Appellate Procedure; because such a failure is remediable by way of retroactive findings and conclusions upon remand, the court of appeals was authorized to remand the cause to the trial court with directions to supplement the record with the missing findings and conclusions.[28] We hold that the court of appeals erred to affirm the trial court's ruling on the

---

[27] *See id*. at 699 ("If the non-prevailing party fails to make the request [for express findings of fact and conclusions of law], *and the trial court does not enter findings of fact and conclusions of law of its own accord*, the non-prevailing party can still appeal any adverse ruling. In that event, our opinion in *Ross* will continue to control. 32 S.W.3d at 858.") (emphasis added)).

[28] *See* TEX. R. APP. P. 44.4 ("A court of appeals must not affirm . . . a judgment . . . if . . . the trial court's erroneous . . . failure . . . to act prevents the proper presentation of a case to the court of

motion to suppress without first remanding the cause for the entry of supplemental findings of fact and conclusions of law under Rule 44.4.  By this holding, we avoid the kind of appellate speculation that we decried in *Cullen*, and assure that appellate review of the legality of the initial stop will be based upon the actual findings of the judicial entity to which the fact finding function is institutionally assigned—the trial court.

## SEARCH INCIDENT TO ARREST?

The court of appeals also erred to affirm the trial court's ruling solely on authority of the Supreme Court's opinion in *Arizona v. Gant*.  We do not take issue with the court of appeals's conclusion that a search incident to arrest was not justified since the appellee had stepped away from the van by the time the search was conducted, and no evidence of the offenses for which the arrest warrants had issued could reasonably be expected to turn up from a search of the van.  Instead, we question the court of appeals's assumption that the only possible justification for the search was as a search incident to arrest.  The court of appeals should not have affirmed the trial court's ruling on the motion to suppress on this basis without first addressing an alternative justification for the search that the State raised on direct appeal.

The parties do not dispute, and the trial court found as a matter of fact,[29] that once

---

appeals; and . . . the trial court can correct its . . . failure to act.  * * *  [T]he court of appeals must direct the trial court to correct the error.  The court of appeals will then proceed as if the erroneous . . . failure to act had not occurred.").

[29]

 *See* Finding of Fact No. 5 ("Deputy Sanchez determined that [the appellee] had prior

Sanchez stopped the appellee, he almost immediately discovered the outstanding warrants for the appellee's custodial arrest. These arrest warrants, the State asserted at trial and on appeal, would serve to attenuate the taint of any illegality emanating from the initial detention. After the appellee was placed under custodial arrest pursuant to those warrants, the State's argument proceeds, there was no constitutional impediment to Sanchez subjecting the van to a K-9 drug sniff, since that does not constitute a search for Fourth Amendment purposes.[30] And when the dog alerted to the presence of drugs in the van, Sanchez had probable cause to conduct a warrantless search pursuant to the automobile exception to the Fourth Amendment warrant requirement.[31] If the State's argument is credited, it could justify Sanchez's warrantless search of the van, not because it was incident to the arrest, but because there was probable cause to justify it stemming from the non-invasive K-9 sniff.

---

outstanding warrants for a disregarded a stop sign, failure to appear, and failure to maintain financial responsibility, and placed [the appellee] under arrest."), at page 10, *ante*.

[30] *Illinois v. Caballes*, 543 U.S. 405 (2005); *State v. Dobbs*, 323 S.W.3d 184, 188 n.11 (Tex. Crim. App. 2010).

[31] George E. Dix & Robert O. Dawson, 40 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 12.52 (2d ed. 2002), at 778-79. In its written findings of fact, the trial court expressly found that the drug dog alerted to the van's interior. ("8. The canine alerted to the odor of narcotics on the driver's side window and the rear double doors of the van." *See* page 10, *ante*.) To the extent that its legal conclusion No. 3 suggests that the trial court determined that there was no probable cause to search the van, *see* page 10, *ante* ("The subsequent . . . search of [the appellee's] vehicle, not supported by probable cause . . ., was illegal.") , this constituted an erroneous application of law to the facts as the trial court expressly found them. It is within the appellate court's prerogative to conduct a *de novo* review of this application of law to fact. *See State v. Ross*, *supra*, at 856 (appellate courts may review *de novo* mixed questions of law and fact that do not turn on credibility determinations).

Rather than address the merits of the State's alternative argument for the first time in a petition for discretionary review, we will remand the cause to the court of appeals for it to resolve it in the first instance.[32] There are two aspects of the State's argument that bear further scrutiny. First, the court of appeals all but assumed-without-deciding that Texas law holds that an intervening arrest warrant will in fact attenuate the taint of an initial illegal detention.[33] For this proposition, the court of appeals cited only another court of appeals's opinion.[34] While this Court has yet to directly weigh in on this issue, we note that a number of other jurisdictions have held that an intervening arrest warrant *may*, under certain circumstances, serve to attenuate taint, depending upon an application of the attenuation factors of *Brown v. Illinois*.[35] Second, it could *perhaps* be debated whether the automobile

---

[32] *E.g.*, *Stringer v. State*, 241 S.W.3d 52, 59 (Tex. Crim. App. 2007) (in its discretionary review capacity, this Court does not review issues not decided by the court of appeals, but court of appeals could consider State's alternative argument on remand).

[33] *See State v. Elias*, *supra*, at *3 ("Texas courts have held where an officer conducts an illegal investigatory stop but discovers outstanding warrants for the defendant's arrest during the stop, the warrants serve as the proper basis for the arrest and searches of the defendant's person and car. *See Fletcher v. State*, 90 S.W.3d 419, 420 (Tex. App.—Amarillo 2002, no pet.). The discovery of outstanding warrants erase [sic] any taint that may have arisen from the illegal stop, and so the evidence uncovered during the search are [sic] admissible. *See id.*"). In the trial court, the State had cited a different court of appeals opinion for this same proposition. *See* n.5, *ante*.

[34] *Id*.

[35] 422 U.S. 590, 603-604 (1975) (temporal proximity of initial illegality to acquisition of evidence, the presence of intervening circumstances, and the purpose and flagrancy of police misconduct are all relevant factors in deciding whether evidence was obtained by exploitation of the illegality such that the Fourth Amendment exclusionary rule should apply). *See, e.g.*, *People v. Hillyard*, 197 Colo. 83, 85-86, 589 P.2d 939, 941 (1979) (applying *Brown* factors to determine

exception to the warrant requirement ought properly to be applied on the facts presented.

This Court has suggested on at least one occasion that:

> [i]t may be that where police come upon an automobile that is parked, and a suspect [associated with the automobile] is in custody, something more than the inherent mobility of the vehicle is needed to establish exigent circumstances to justify a warrantless search.[36]

Especially in light of these potential issues, which have not been briefed in this Court, it is appropriate to remand the cause to the court of appeals for resolution of the State's alternative argument in the first instance. The court of appeals may invite additional briefing from the parties as it sees fit.

## CONCLUSION

In summary, the court of appeals erred in two respects in its disposition of the State's appeal. First, it erred to affirm the trial court's grant of the appellee's suppression motion

---

whether taint from illegal initial detention is attenuated by detaining officer's subsequent discovery of outstanding arrest warrant); *State v. Thompson*, 231 Neb. 771, 777-78, 438 N.W.2d 131, 136-37 (1989) (same); *United States v. Green*, 111 F.3d 515, 521-23 (CA7 1997) (same); *State v. Hill*, 725 So.2d 1282 (La. 1998) (same); *State v. Jones*, 270 Kan. 526, 17 P.3d 359 (2001) (same); *United States v. Johnson*, 383 F.3d 538 (CA7 2004) (same); *State v. Page*, 140 Idaho 841, 845-47, 103 P.3d 454, 459-60 (2004) (same); *Jacobs v. State*, 128 P.3d 1085 (Okla. Crim. App. 2006) (same); *State v. Frierson*, 926 So.2d 1139 (Fla. 2006) (same); *United States v. Simpson*, 439 F.3d 490, 494-47 (CA8 2006) (same); *Golphin v. State*, 945 So.2d 1174, 1190-93 (Fla. 2006) (same); *State v. Martin*, 285 Kan. 994, 1002-1005, 179 P.3d 457, 462-64 (2008) (same); *People v. Brendlin*, 45 Cal.4th 262, 195 P.3d 1074, 85 Cal.Rptr.3d 496 (2008) (same).

[36]

    Dix & Dawson, *supra*, at 779 n. 6 (quoting *Amos v. State*, 819 S.W.2d 156, 161 (Tex. Crim. App. 1991)). *But see contra Neal v. State*, 256 S.W.3d 264, 282-83 (Tex. Crim. App. 2008) ("Appellant further argues that there was no concern that the evidence in the truck would be destroyed or lost because [appellant was] already in police custody. The automobile exception, however, does not require exigent circumstances.").

on the basis that the initial detention was illegal without first remanding the cause to the trial court for specific findings of fact with respect to whether the appellee failed to signal his intention to turn within a hundred feet of the intersection. Second, it also erred to affirm the trial court's grant of the appellee's suppression motion without first addressing the State's alternative argument that the arrest warrants attenuated the taint of any initial illegality, and that the K-9 sniff provided probable cause to justify the warrantless search of the van under the automobile exception. In the event that the court of appeals, on remand, rules in the State's favor with respect to the second issue, it should reverse the trial court's ruling on the suppression motion and remand the cause for trial. But if the court of appeals rules in the appellee's favor with respect to the second issue, it should then remand the cause to the trial court for specific findings of fact and a ruling of law as to the first issue, *viz*: whether the initial detention was justified by at least a reasonable suspicion that the appellee failed to signal his intention of turning within a hundred feet of the intersection.[37] The judgment of the court of appeals is vacated and the cause is remanded to the court of appeals for further proceedings consistent with this opinion.

DELIVERED:      April 6, 2011
PUBLISH

---

[37] In the event that the trial court, on remand (if any), should again grant the appellee's motion to suppress, presumably the State may once again pursue an interlocutory appeal of that ruling under TEX. CODE CRIM. PROC. art. 44.01(5).