COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS


 
 
  
  
 THE STATE OF TEXAS,
  
                                    
 Appellant,
  
 v.
  
 ABRAN ELIAS,
  
                                     Appellee.
 
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
 
 
  
  
                   No. 08-08-00085-CR
  
                          Appeal from
  
 Criminal District
 Court No. 1
  
 of El Paso County,
 Texas
  
 (TC # 20070D04051)
 
 


O
P I N I O N

 

            The State appealed the trial court’s
order suppressing evidence.  We
previously affirmed, but the Court of Criminal Appeals vacated our judgment and
remanded the case.  State v. Elias, No. 08-08-00085-CR, 2010 WL 1478909 (Tex.App.--El
Paso April 14, 2010), reversed by State v. Elias, 339 S.W.3d 667
(Tex.Crim.App. 2011).  We reverse the
suppression order and remand the cause for trial.

FACTUAL SUMMARY

            An El Paso County grand jury
indicted Abran Elias for possession of more than 2,000 pounds of
marihuana.  Elias filed a motion to
suppress alleging that his initial detention was not supported by reasonable
suspicion or probable cause and the evidence seized during the search of his
vehicle should be suppressed.[1]  At the pretrial hearing on the motion to
suppress, El Paso County Deputy Sheriff Eduardo Sanchez, Jr. testified that he
was a K-9 officer assigned to the Metro Narcotics Task Force.  Benjamin Perales, who is assigned to the
Metro Criminal Enterprise Unit, contacted Sanchez by radio and asked him to
assist with a narcotics investigation. 
Perales told him that a drug deal might be occurring at the Super Target
and he asked Perales to remain in the area. 
Perales contacted Sanchez later and told him that a white cargo van,
located at the intersection of Sombra del Sol and Zaragosa might be loaded with
drugs.  Sanchez drove to the intersection
and saw the white van stopped at the stop sign in such a position that “it
would have to make a right turn.”  Sanchez
specifically testified that the van was not signaling either a left or right
turn when he saw it stopped at the stop sign. 
Sanchez continued through the intersection and the van turned onto
Zaragosa.  Sanchez turned around and
activated his emergency equipment to conduct a traffic stop because the driver
of the van, Elias, had failed to signal his intention to turn.  On cross-examination, Sanchez admitted that
he had not actually seen the van make the turn. 
Elias attempted to exit the van while his seatbelt was still
attached.  Elias produced a Texas
identification card but he did not have a driver’s license or proof of
insurance.  When Sanchez told Elias that
he had pulled him over because he failed to signal his intent to turn, Elias
admitted he had not signaled and told Sanchez he was sorry.  Elias also told Sanchez he was nervous because
he thought he had some warrants.  Sanchez
conducted a warrants check and determined that Elias had outstanding warrants
for failure to appear, disregarding a stop sign, and failure to maintain
financial responsibility.  Sanchez placed
Elias under arrest based on the warrants. 
He then got his K-9 partner, D’Jenno, out of the patrol car and ran him
around the van.  The dog alerted to the
odor of narcotics at the driver’s side door and open window and at the rear
doors of the van.  Sanchez opened the rear
doors of the van and saw boxes and duffel bags. 
The K-9 alerted to both the boxes and duffel bags by scratching on them
which indicated that narcotics were close. 
Sanchez opened the boxes and duffel bags and found bricks of marihuana
wrapped in cellophane.

            Elias argued at the hearing that the
evidence did not support a conclusion that he had committed the traffic
violation because Sanchez admitted he did not actually see Elias make the turn
without a signal.  The State argued a
traffic violation had occurred because Sanchez testified he saw Elias’s vehicle
sitting at the intersection without a turn signal and he subsequently turned.  The State also argued that Sanchez’s
discovery of the outstanding warrants attenuated the taint of any initial
illegality.  The trial court signed an
order granting Elias’s motion to suppress the evidence and entered findings of
fact and conclusions of law.  The pertinent
findings of fact are as follows:

2.  Deputy Sanchez passed the van going
approximately 50 miles per hour and drove 30 yards north on Zaragosa, then
turned around and conducted a traffic stop of the van, that was traveling south
on Zaragosa, for the driver’s alleged failure to signal an intent to make a
right turn at the intersection.

 

3.  Deputy Sanchez testified that he did not see [Elias]
fail to signal intent to turn right from his vantage point as he proceeded 30
yards away on Zaragosa.

 

.          .          .

 

5.  Deputy Sanchez determined that Elias had prior
outstanding warrants for a disregarded stop sign, failure to appear, and
failure to maintain financial responsibility, and placed Elias under arrest.

 

.          .          .

 

7.  Deputy Sanchez testified that knowing the van
might possibly contain illegal narcotics, he had his certified canine, D’Jenno,
conduct an exterior ‘sniff’ of Elias’s vehicle.

 

8.  The canine alerted to the odor of narcotics on
the driver’s side window and the rear double doors of the van.

 

9.  Deputy Sanchez opened the door of the van and
conducted a search of the vehicle, and then his dog sniffed and alerted on
several duffel bags and boxes inside the van.

 

10.  Deputy Sanchez opened the boxes and duffel
bags and found ‘bricks’ of narcotics wrapped in cellophane tape, which later
proved to be approximately 300 pounds of marijuana.

 

11.  El Paso Sheriff’s Detective, Benjamin Perales
(‘Perales’) obtained a warrant for the search of Elias’ residence at 2253
Tierra Robles in El Paso County, Texas.

 

12.  At the [sic] Elias’ residence, officers found
approximately 2019 pounds of marijuana.  

 

The trial court
made the following conclusions of law:

1.  Deputy Sanchez had no reasonable suspicion or
probable cause to believe that Elias had committed a traffic violation in his
presence while Elias’ vehicle was stopped at the intersection of Sombra del Sol
and Zaragosa, in El Paso County, Texas.

 

2.  The Court finds no reasonable suspicion to
believe that the traffic violation charged occurred.

 

3.  The subsequent warrantless arrest of Elias and
the search of his vehicle, not supported by probable cause or reasonable
suspicion of criminal activity, was illegal.

 

4.  The Court finds that the evidence seized in
Elias’ van is suppressed.

5.  The Court did not address any evidence
obtained as a result of the search warrant executed at 2253 Tierra Robles, El
Paso County, Texas on or about September 7, 2007.  

 

The trial court did
not address the State’s alternative argument that Elias’s outstanding arrest
warrants attenuated the taint of any illegality with respect to the initial
traffic detention.

            We affirmed the trial court’s
ruling, but the Court of Criminal Appeals vacated our judgment.  State
v. Elias, No. 08-08-00085-CR, 2010 WL 1478909 (Tex.App.--El Paso April 14,
2010), reversed by State v. Elias, 339 S.W.3d 667
(Tex.Crim.App. 2011).  The Court held
that we erred by affirming the trial court’s ruling on the basis that the
initial detention was illegal without first remanding the cause to the trial
court for specific findings of fact with respect to whether Elias failed to
signal his intention to turn within a hundred feet of the intersection.  Elias,
339 S.W.3d at 679.  Further, the Court
determined that we erred by affirming the trial court without first addressing
the State’s alternative argument that the arrest warrants attenuated the taint
of any initial illegality and that the K-9 sniff provided probable cause to
justify the warrantless search of the van under the automobile exception.  Id.  The Court instructed us to examine the
second issue on remand and, if we rule in favor of the State on that issue, to
reverse the trial court’s ruling on the suppression issue and remand the cause
for trial.  Id.  If, however, we rule
against the State on the second issue, we are instructed to remand the cause to
the trial court for specific findings of fact and a ruling of law on the first
issue, viz: whether the initial
detention was justified by at least a reasonable suspicion that the Appellee
failed to signal his intention that the Appellee failed to signal his intention
of turning within a hundred feet of the intersection.  Id.


            After determining that additional
findings were required with respect to the attenuation issue, we ordered the
trial court to make additional findings related to both the initial detention
and attenuation issues.  The cause was
remanded to the Criminal District Court No. 1 of El Paso County and the
Honorable Susan Larsen, sitting by assignment, made findings and conclusions in
compliance with our order.  Judge Larsen had
not presided over the suppression hearing but she based her findings and
conclusions on a review of the reporter’s record of the hearing.  Since the additional findings required an
assessment of the credibility of the State’s sole witness, we did not file the
findings made by Judge Larsen and ordered the judge who heard the suppression
motion to make the findings.  The
Honorable Kathleen Olivares[2]
complied with our order and entered the following written findings:

1.       On September 7, 2007, at approximately 1315
hrs., Detectives from the El Paso County Metro Criminal Enterprise Unit of
the El Paso County Sheriff’s Department, along with Detective Benjamin Perales
(‘Perales’), set up surveillance at the Super Target located at 1874 Joe
Battle, El Paso County, Texas.  

 

2.      At
approximately 1345 hrs., Defendant, Abran Elias (‘Elias’), was observed meeting
in front of the Super Target store with an unknown subject and Defendant Elias
proceeded to get into the passenger seat of a brown Chevrolet Tahoe.

 

3.      Detectives
followed the brown Chevrolet Tahoe to 2253 Tierra Robles, El Paso County,
Texas where Defendant Elias was observed minutes later pulling out of the
garage in a white van.

 

4.      El
Paso Sheriff’s K9-1 Deputy, Eduardo Sanchez Jr., was contacted via police radio
by Detective Perales in reference to assist(ing) in a possible narcotics deal
at approximately one o’clock in the afternoon. 

 

5.      Deputy
Sanchez was given the approximate location of the white cargo van (‘leaving the
residential area heading towards Zaragosa’) and told that ‘it was possibly
loaded with narcotics.’

 

6.      While
traveling on Zaragosa, Detective Perales contacted Deputy Sanchez and advised
him that the white van was at the intersection of Sombra del Sol and Zaragosa.

 

7.      Deputy
Sanchez testified that he saw the van stopped at the intersection at the stop
sign.

 

8.      Deputy
Sanchez testified that he passed the van going approximately 50 miles per hour
and drove 30 yards north on Zaragosa, then turned around and conducted a
traffic stop of the van, that was traveling south on Zaragosa, because ‘it
failed to signal a right turn from that stop.’

 

9.      Deputy
Sanchez testified that he passed the Defendant Elias while the Defendant was stationary
in a lawful stop and that the Defendant hadn’t committed a ticketable offense
yet.

 

10.  Deputy
Sanchez testified that he did not see the Defendant, Abran Elias (‘Elias’),
fail to signal intent to turn right from his vantage point as he proceeded 30 yards
away on Zaragosa.  

 

The court also made the following conclusions of law:

1.       Deputy Sanchez had no reasonable suspicion or
probable cause to believe that Defendant Elias had committed a traffic
violation in his presence while Defendant’s Elias’ vehicle was stopped at the
intersection of Sombra del Sol and Zaragosa, in El Paso County, Texas.

 

2.      The
Court finds no reasonable suspicion to believe that the traffic violation
charged occurred or that Defendant Elias had committed a different traffic offense
that would have supported the traffic stop, specifically, a failure to signal
his intention to turn within a hundred feet of the intersection.

 

3.      The
subsequent warrantless arrest of Elias and the search of his vehicle, not
supported by probable cause or reasonable suspicion of criminal activity, was
illegal.

 

4.      The
Court further finds that the evidence establishes that the traffic stop of
Defendant Elias’ van was made as a pretext for the narcotic investigation that
was being conducted by the El Paso County Metro Criminal Enterprise Unit of the
El Paso County Sheriff’s Department on Defendant Elias and other unknown
subjects.

 

5.      The
evidence seized in Elias’ van is suppressed. 


Significantly, the
trial judge did not make any express finding that she disbelieved any aspect of
Sanchez’s testimony, including his testimony that Elias’ van was not signaling
either a left or right turn when Sanchez approached and drove through the
intersection.  The case is now before us
for determination of the issues on remand.  

LEGALITY OF THE INITIAL DETENTION

            In its first issue, the State
contends that the trial court erred by granting the motion to suppress because
Sanchez’s traffic stop was supported by at least a reasonable suspicion that
Elias had violated Section 545.104 of the Transportation Code by failing to “signal
continuously for not less than the last 100 feet of movement of the vehicle
before the turn.”  See Tex.Transp.Code Ann. §
545.104(a), (b)(West 2011).

Standard of Review

            When reviewing a trial court’s
ruling on a pre-trial motion to suppress, an appellate court is required to
afford almost total deference to a trial court’s determination of the
historical facts that the record supports especially when the trial court’s
fact findings are based on an evaluation of credibility and demeanor.  Elias,
339 S.W.3d at 673.  We afford the same
amount of deference to a trial court’s ruling on “application of law to fact
questions” or “mixed questions of law and fact” if the resolution of those
ultimate questions turns on an evaluation of credibility and demeanor.  Id.  An appellate court reviews de novo those mixed questions of law and
fact which do not turn on an evaluation of credibility and demeanor.  Id.

            Certain presumptions arise when a
trial court grants a motion to suppress and does not make any findings of fact
and conclusions of law either upon request of the State or of the court’s own
volition.  In such a case, we presume
that the trial court implicitly resolved all issues of historical fact and
witness credibility in the light most favorable to its ultimate ruling.  Elias,
339 S.W.3d at 674.  Further, we presume
that if the State’s evidence was uncontradicted and if believed would have
supported admission of the evidence sought to be suppressed, the trial court
simply chose to disbelieve the uncontradicted testimony.  Id.  The trial court is required, however, to
state its essential findings upon the request of the losing party.  Id.  The Court of Criminal Appeals has explained
that “essential findings” means “findings of fact and conclusions of law
adequate to provide an appellate court with a basis upon which to review the
trial court’s application of the law to the facts.”  Elias,
339 S.W.3d at 674, quoting State v.
Cullen, 195 S.W.3d 696, 699 (Tex.Crim.App. 2006).  

Reasonable Suspicion

            The Fourth Amendment to the United
States Constitution protects citizens from unreasonable searches and seizures
at the hands of government officials.  Crain v. State, 315 S.W.3d 43, 52
(Tex.Crim.App. 2010).  Under the Fourth
Amendment, a warrantless detention of a suspect that amounts to less than a
full-blown custodial arrest must be justified at least by a reasonable
suspicion.  Elias, 339 S.W.3d at 674.  A
police officer has reasonable suspicion to detain a person if he has specific,
articulable facts that, combined with rational inferences from those facts,
would lead him reasonably to conclude that the person detained is, has been, or
soon will be engaged in criminal activity. 
Elias, 339 S.W.3d at 674; Crain, 315 S.W.3d at 52.  This is an objective standard which examines
whether there was an objective justification for the detention.  Elias,
339 S.W.3d at 674.  The subjective intent
or motive of the detaining officer is disregarded in this analysis.  Id.   

            Section 545.104 of the
Transportation Code provides:

(a)     An
operator shall use the signal authorized by Section 545.106[3]
to indicate an intention to turn, change lanes, or start from a parked
position.

 

(b)     An
operator intending to turn a vehicle right or left shall signal continuously
for not less than the last 100 feet of movement of the vehicle before the turn.

 

Tex.Transp.Code Ann. § 545.104.  The Court of Criminal Appeals stated in Elias that the objective facts supported
a reasonable inference that Elias violated Section 545.104(b) of the
Transportation Code because Sanchez testified that he was able to see, as he
approached Elias’s van at the intersection, that there was no turn signal
flashing in the moments before Elias made the turn when the van was positioned at
the intersection and Elias subsequently made a right turn.  Elias,
339 S.W.3d at 675.  Thus, there is at least a reasonable
suspicion that Elias committed a traffic violation which would support the
initial detention, that is, he turned right onto Zaragosa without continuously
signaling his intent to turn for the last 100 feet before making the turn.  The trial court’s written fact findings do
not address whether the court believed or disbelieved this testimony so the
Court of Criminal Appeals remanded the case to this Court with instructions
that we require the trial court to make additional findings.  Id.
at 675-76.

In
its supplemental findings, the trial court has again failed to address Sanchez’s
testimony that the van’s turn signals were not flashing when he approached the
intersection and the court has not made an adverse finding on Sanchez’s
credibility on this dispositive issue.  Given
that the trial court has been given an opportunity to clarify whether it
disbelieved any aspect of Sanchez’s testimony and has chosen not to do so, we conclude
that the trial court believed all of Sanchez’s testimony and the court did not
make any explicit findings on this dispositive issue because it has erroneously
regarded the findings as peripheral or non-essential.  See id.
at 675-76.  

As
the Court stated in Elias, the
evidence, when viewed objectively,
supports a reasonable inference that Elias violated Section 545.104(b) by
failing to continuously signal his intention to turn for the last 100 feet of
movement before he turned onto Zaragosa. 
Elias, 339 S.W.3d at 675.  Sanchez
testified he saw the van stopped at the stop sign and its turn signal was not
flashing.  He accurately testified that a
traffic violation had not occurred at that point because the van had not yet
turned.  Even if Elias turned on his turn
signal after Sanchez cleared the intersection and just before Elias turned onto
Zaragosa, he still would have violated Section  545.104(b) because he had
not signaled continuously for the
last 100 feet of movement before he turned. 
We therefore find that the initial detention is supported by at least a
reasonable suspicion that Elias had committed a traffic violation.

Search Incident to Arrest

                The search of Elias’s van took place on September 7,
2007.  At that time, an officer who had
made a lawful custodial arrest of the occupant of an automobile could, as a
contemporaneous incident of that arrest, search the passenger compartment of
the automobile.  See New York v. Belton, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69
L.Ed.2d 768 (1981); State v. Gray,
158 S.W.3d 465, 470 (Tex.Crim.App. 2005). 
In 2009, the United States Supreme Court decided Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009)
which clarified the permissible scope of a vehicle search incident to the
arrest of a motorist.  The Supreme Court
held that police may search a vehicle incident to a recent occupant’s arrest
only if the arrestee is within reaching distance of the passenger compartment
at the time of the search or it is reasonable to believe the vehicle contains
evidence of the offense of arrest.  Gant, 556 U.S. at 351, 129 S.Ct. at 1723.  When these justifications are absent, a
search of an arrestee’s vehicle will be unreasonable unless police obtain a
warrant or show that another exception to the warrant requirement applies.  Gant,
556 U.S. at 351, 129 S.Ct. at 1723-24.

Citing
Davis v. United States, --- U.S. ---,
131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), the State argues that, even assuming
that the search was later determined to be unconstitutional under Arizona v. Gant,[4]
the evidence seized by the law enforcement officers is not subject to the
exclusionary rule because the officers conducted the search incident to arrest
in objective good faith reliance on then-binding appellate precedent.  In Davis,
the police searched the defendant’s vehicle as a search incident to
arrest.  That search took place in April
of 2007 which was two years before the Supreme Court decided Gant.  Davis,
--- U.S. ---, 131 S.Ct. at 2425.  The
Supreme Court held that Gant’s rule
applied retroactively but evidence obtained during a search conducted in
reasonable reliance on then-binding precedent is not subject to the
exclusionary rule.  Davis, --- U.S. ---, 131 S.Ct. at 2429.  

Although
the search of Elias’s van was unconstitutional under Gant, the police conducted the search in 2007 in good faith
reliance on appellate precedent authorizing the search incident to arrest.  Accordingly, we conclude that the
exclusionary rule does not apply in this case. 
See Davis, --- U.S.---, 131
S.Ct. at 2429.  Issue One is
sustained.  Having determined that the exclusionary
rule does not require suppression of the evidence, we will not address the
State’s alternative argument regarding the attenuation doctrine.  The suppression order is reversed and the
cause is remanded for trial.

 

 

September 26, 2012                            _______________________________________________

ANN CRAWFORD
McCLURE, Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

 

(Do Not Publish) 

 











[1]  Elias also challenged the search of his
residence conducted pursuant to a search warrant but the trial court did not
rule on that issue.





[2]  Judge Olivares is the presiding judge of the
205th District Court.  The record does
not reflect why Judge Olivares heard the suppression motion in this case.  Presiding Judge Keller’s concurrence in Elias expressed concern about problems
which could arise if the judge who heard the suppression motion is no longer on
the bench.  Elias, 339 S.W.3d at 680 (Keller, J., concurring).  Fortunately, that sort of problem was avoided
in this case because the judge who originally heard the suppression motion was
available to make the supplemental findings.

 

 





[3]  Section
545.106(a) provides for the use of hand and arm or signal lamp when an operator
is required to give a stop or turn signal.  TEX.TRANSP.CODE ANN. § 545.106(a).





[4]  Arizona
v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).