

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0209-12

**JACKIE JOHNSON, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

**KELLER, P.J., filed a concurring opinion in which KEASLER and HERVEY, JJ., joined.**

I write separately to point out my disagreements with the Court's recitation of the facts and

to explain why I nevertheless agree with the Court's disposition of the case.

Even when an application-of-law-to-fact question is subject to *de novo* review, an appellate

court should nevertheless afford deference to the trial court on any underlying issues of historical

fact.[1] Ruling in the State's favor on the motion to suppress, the trial judge stated that the "minimal

---

[1] *Johnson v. State*, 169 S.W.3d 223, 239 & n.90 (Tex. Crim. App. 2005) (citing *Kober v. State*, 988 S.W.2d 230, 233 (Tex. Crim. App. 1999)(citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997))).

detention" was supported by reasonable suspicion. If the trial judge's statement that there was a "detention," however "minimal," were construed to be an articulation of findings of fact as contemplated by *State v. Elias*,[2] it would be incomplete, since we would not know what factual circumstances were believed by the trial judge to have created the detention. Appellant and the police officer gave somewhat different accounts of what happened. Did the trial judge believe the police officer's account, appellant's account, or some combination thereof? If the difference in the participants' accounts materially affects the detention question, and if the trial judge's comments are viewed as findings, then we would be required to remand for further findings.[3]

However, a remand is unnecessary here because even when the evidence is viewed in the light most favorable to the trial judge's ultimate ruling on the motion to suppress, a detention occurred. Although the Court does not explicitly say that it is taking such a position, that seems to be the only logical explanation for the Court's disposition of the case. If that is what the Court is doing, then it should recite the facts as viewed through that deferential lens, but in many instances, the Court presents a defense-oriented view of the facts.

Addressing the officer's testimony that the call slip reported a man standing in front of the leasing office, the Court says that this testimony was not supported by "the call slip in evidence." That is true as far as it goes, but the implication that the officer was lying is misleading. The officer testified repeatedly that the call slip introduced by defense counsel was not complete. The officer's testimony that the call slip reported a man standing in front of the leasing office is sufficient evidence that it did indeed report that fact.

---

[2] *State v. Elias*, 339 S.W.3d 667 (Tex. Crim. App. 2011).

[3] *Id.* at 676-77.

The Court also characterizes the officer's testimony as "evasive and argumentative," but it was defense counsel's questioning that was argumentative. Defense counsel asked whether the 9-1-1 tape reported a robbery or a crime. In responding, the officer made the point that, even though the caller did not know for sure that a crime was in progress, the caller was concerned enough to call 9-1-1. Defense counsel later said to the officer that appellant "did not match the description at all" given by the 9-1-1 caller. The officer responded that appellant matched the description "to a certain degree." Although in the second colloquy the trial judge instructed the officer, in response to defense counsel's request, to just answer the question that was asked, I fail to see how the officer can be faulted for his response. But defense counsel was not satisfied with the answer to these and other questions, and at least three times the trial judge sustained the prosecutor's objection that the question had been asked and answered. I do not fault defense counsel's zealous representation of his client in aggressively cross-examining the officer, but given defense counsel's style of cross-examination, the Court's characterization of the officer's responses as "evasive and argumentative" is at odds with a deferential view of the record.

The Court next says that the officer's stubbornness about the content of the call slip prompted the trial judge to comment, "You're never going to get him to say it, but I can read." But this comment occurred in the middle of a colloquy in which the trial judge twice admonished *defense counsel* to move on. The comment was not an expression of agreement with defense counsel's view of the case; it was an effort to move him along, and it was an assurance that the trial judge would read the call slip and ascertain for himself what it said. This is clear from the trial judge's follow-up comment that "I will look at the call slip, I promise you."

The Court also points to the officer's testimony that it is "possible" that he pulled out his

pistol. But the following shows the full context of this comment during defense counsel's cross-examination of the officer:

> Q:  Do you remember pulling your pistol out, also?
>
> A:  *No.*
>
> Q:  Is that possible, Officer?
>
> A:  I don't - -
>
> Q:  It's possible, isn't it?
>
> A:  It's possible, but *I don't think so.* I didn't feel threatened.
>
> Q:  But it's possible you pulled your pistol out also.
>
> A:  It's possible. It's possible.[4]

A deferential view of the evidence should at least include the officer's initial testimony. Furthermore, a finding that the officer pulled his gun would seem inconsistent with the trial court's characterization of the detention as "minimal."

The Court further points to the officer's affirmative answer to the following two-sentence question: "And basically what he did that day is he yielded to your authority, didn't he? He followed what you told him to do?" It is not entirely clear whether the officer's answer relates to both questions or just the second question, but even if we assume that it is an answer to both questions, the answer does not tell us *when* appellant yielded to the officer's authority.

Finally, the Court recites various statements from a *defense* witness, who was a police officer, as to how he would have acted under the circumstances. The trial judge was not required to believe this testimony and, under a deferential view of the evidence, there is no reason for the Court to even

---

[4]  Emphasis added.

refer to it in its opinion.

Nevertheless, I agree with the Court's disposition of the case because the evidence, even when viewed in the light most favorable to the trial court's ruling on the motion to suppress, shows that there was a detention. The record contains a photograph that shows where appellant's automobile was parked and a diagram of where appellant's car and the officer's car were parked on the night in question. From the photograph and the diagram, it is apparent that, although appellant "probably could have maneuvered" around the officer's car, it would have been difficult.[5] It is undisputed that the officer shone a bright spotlight onto appellant's car and that the officer used an "outside voice." I think these circumstances are sufficient under our caselaw to show that, as the trial court said, a "minimal detention" had occurred at the time the spotlight was shown and the officer called out to appellant.[6]

With these comments, I concur in the Court's judgment.

Filed: December 11, 2013
Publish

---

[5] The officer's car was parked diagonally at the right front side of appellant's car, and a gate access reader was situated to the left front of appellant's parking space. The parking space was up against a building and there were two parking spaces on either side, which were bordered by either shrubs or the fencing around the property.

[6] *See Crain v. State*, 315 S.W.3d 43, 50-52 (Tex. Crim. App. 2010).