COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| THE STATE OF TEXAS, | | No. 08-08-00085-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | Criminal District Court No. 1 |
| | § | |
| ABRAN ELIAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20070D04051) |
| | § | |

## O P I N I O N

The State appealed the trial court's order suppressing evidence. We previously affirmed, but the Court of Criminal Appeals vacated our judgment and remanded the case. *State v. Elias*, No. 08-08-00085-CR, 2010 WL 1478909 (Tex.App.--El Paso April 14, 2010), *reversed by State v. Elias*, 339 S.W.3d 667 (Tex.Crim.App. 2011). We reverse the suppression order and remand the cause for trial.

### FACTUAL SUMMARY

An El Paso County grand jury indicted Abran Elias for possession of more than 2,000 pounds of marihuana. Elias filed a motion to suppress alleging that his initial detention was not supported by reasonable suspicion or probable cause and the evidence seized during the search of his vehicle should be suppressed.[1] At the pretrial hearing on the motion to suppress, El Paso County Deputy Sheriff Eduardo Sanchez, Jr. testified that he was a K-9 officer assigned to the Metro Narcotics Task Force. Benjamin Perales, who is assigned to the Metro Criminal Enterprise Unit, contacted Sanchez by radio and asked him to assist with a narcotics investigation. Perales told him that a drug deal might be occurring at the Super Target and he

---

[1] Elias also challenged the search of his residence conducted pursuant to a search warrant but the trial court did not rule on that issue.

asked Perales to remain in the area. Perales contacted Sanchez later and told him that a white cargo van, located at the intersection of Sombra del Sol and Zaragosa might be loaded with drugs. Sanchez drove to the intersection and saw the white van stopped at the stop sign in such a position that "it would have to make a right turn." Sanchez specifically testified that the van was not signaling either a left or right turn when he saw it stopped at the stop sign. Sanchez continued through the intersection and the van turned onto Zaragosa. Sanchez turned around and activated his emergency equipment to conduct a traffic stop because the driver of the van, Elias, had failed to signal his intention to turn. On cross-examination, Sanchez admitted that he had not actually seen the van make the turn. Elias attempted to exit the van while his seatbelt was still attached. Elias produced a Texas identification card but he did not have a driver's license or proof of insurance. When Sanchez told Elias that he had pulled him over because he failed to signal his intent to turn, Elias admitted he had not signaled and told Sanchez he was sorry. Elias also told Sanchez he was nervous because he thought he had some warrants. Sanchez conducted a warrants check and determined that Elias had outstanding warrants for failure to appear, disregarding a stop sign, and failure to maintain financial responsibility. Sanchez placed Elias under arrest based on the warrants. He then got his K-9 partner, D'Jenno, out of the patrol car and ran him around the van. The dog alerted to the odor of narcotics at the driver's side door and open window and at the rear doors of the van. Sanchez opened the rear doors of the van and saw boxes and duffel bags. The K-9 alerted to both the boxes and duffel bags by scratching on them which indicated that narcotics were close. Sanchez opened the boxes and duffel bags and found bricks of marihuana wrapped in cellophane.

Elias argued at the hearing that the evidence did not support a conclusion that he had committed the traffic violation because Sanchez admitted he did not actually see Elias make the

turn without a signal. The State argued a traffic violation had occurred because Sanchez testified he saw Elias's vehicle sitting at the intersection without a turn signal and he subsequently turned. The State also argued that Sanchez's discovery of the outstanding warrants attenuated the taint of any initial illegality. The trial court signed an order granting Elias's motion to suppress the evidence and entered findings of fact and conclusions of law. The pertinent findings of fact are as follows:

2. Deputy Sanchez passed the van going approximately 50 miles per hour and drove 30 yards north on Zaragosa, then turned around and conducted a traffic stop of the van, that was traveling south on Zaragosa, for the driver's alleged failure to signal an intent to make a right turn at the intersection.

3. Deputy Sanchez testified that he did not see [Elias] fail to signal intent to turn right from his vantage point as he proceeded 30 yards away on Zaragosa.

.     .     .

5. Deputy Sanchez determined that Elias had prior outstanding warrants for a disregarded stop sign, failure to appear, and failure to maintain financial responsibility, and placed Elias under arrest.

.     .     .

7. Deputy Sanchez testified that knowing the van might possibly contain illegal narcotics, he had his certified canine, D'Jenno, conduct an exterior 'sniff' of Elias's vehicle.

8. The canine alerted to the odor of narcotics on the driver's side window and the rear double doors of the van.

9. Deputy Sanchez opened the door of the van and conducted a search of the vehicle, and then his dog sniffed and alerted on several duffel bags and boxes inside the van.

10. Deputy Sanchez opened the boxes and duffel bags and found 'bricks' of narcotics wrapped in cellophane tape, which later proved to be approximately 300 pounds of marijuana.

11. El Paso Sheriff's Detective, Benjamin Perales ('Perales') obtained a warrant for the search of Elias' residence at 2253 Tierra Robles in El Paso County, Texas.

12. At the [sic] Elias' residence, officers found approximately 2019 pounds of marijuana.

The trial court made the following conclusions of law:

1. Deputy Sanchez had no reasonable suspicion or probable cause to believe that Elias had committed a traffic violation in his presence while Elias' vehicle was stopped at the intersection of Sombra del Sol and Zaragosa, in El Paso County, Texas.

2. The Court finds no reasonable suspicion to believe that the traffic violation charged occurred.

3. The subsequent warrantless arrest of Elias and the search of his vehicle, not supported by probable cause or reasonable suspicion of criminal activity, was illegal.

4. The Court finds that the evidence seized in Elias' van is suppressed.

5. The Court did not address any evidence obtained as a result of the search warrant executed at 2253 Tierra Robles, El Paso County, Texas on or about September 7, 2007.

The trial court did not address the State's alternative argument that Elias's outstanding arrest warrants attenuated the taint of any illegality with respect to the initial traffic detention.

We affirmed the trial court's ruling, but the Court of Criminal Appeals vacated our judgment. *State v. Elias*, No. 08-08-00085-CR, 2010 WL 1478909 (Tex.App.--El Paso April 14, 2010), *reversed by State v. Elias*, 339 S.W.3d 667 (Tex.Crim.App. 2011). The Court held that we erred by affirming the trial court's ruling on the basis that the initial detention was illegal without first remanding the cause to the trial court for specific findings of fact with respect to whether Elias failed to signal his intention to turn within a hundred feet of the intersection. *Elias*, 339 S.W.3d at 679. Further, the Court determined that we erred by affirming the trial court without first addressing the State's alternative argument that the arrest warrants attenuated the taint of any initial illegality and that the K-9 sniff provided probable cause to justify the warrantless search of the van under the automobile exception. *Id.* The Court instructed us to

examine the second issue on remand and, if we rule in favor of the State on that issue, to reverse the trial court's ruling on the suppression issue and remand the cause for trial. *Id.* If, however, we rule against the State on the second issue, we are instructed to remand the cause to the trial court for specific findings of fact and a ruling of law on the first issue, *viz:* whether the initial detention was justified by at least a reasonable suspicion that the Appellee failed to signal his intention that the Appellee failed to signal his intention of turning within a hundred feet of the intersection. *Id.*

After determining that additional findings were required with respect to the attenuation issue, we ordered the trial court to make additional findings related to both the initial detention and attenuation issues. The cause was remanded to the Criminal District Court No. 1 of El Paso County and the Honorable Susan Larsen, sitting by assignment, made findings and conclusions in compliance with our order. Judge Larsen had not presided over the suppression hearing but she based her findings and conclusions on a review of the reporter's record of the hearing. Since the additional findings required an assessment of the credibility of the State's sole witness, we did not file the findings made by Judge Larsen and ordered the judge who heard the suppression motion to make the findings. The Honorable Kathleen Olivares[2] complied with our order and entered the following written findings:

> 1. On September 7, 2007, at approximately 1315 hrs., Detectives from the El Paso County Metro Criminal Enterprise Unit of the El Paso County Sheriff's Department, along with Detective Benjamin Perales ('Perales'), set up surveillance at the Super Target located at 1874 Joe Battle, El Paso County, Texas.

---

[2] Judge Olivares is the presiding judge of the 205th District Court. The record does not reflect why Judge Olivares heard the suppression motion in this case. Presiding Judge Keller's concurrence in *Elias* expressed concern about problems which could arise if the judge who heard the suppression motion is no longer on the bench. *Elias*, 339 S.W.3d at 680 (Keller, J., concurring). Fortunately, that sort of problem was avoided in this case because the judge who originally heard the suppression motion was available to make the supplemental findings.

2. At approximately 1345 hrs., Defendant, Abran Elias ('Elias'), was observed meeting in front of the Super Target store with an unknown subject and Defendant Elias proceeded to get into the passenger seat of a brown Chevrolet Tahoe.

3. Detectives followed the brown Chevrolet Tahoe to 2253 Tierra Robles, El Paso County, Texas where Defendant Elias was observed minutes later pulling out of the garage in a white van.

4. El Paso Sheriff's K9-1 Deputy, Eduardo Sanchez Jr., was contacted via police radio by Detective Perales in reference to assist(ing) in a possible narcotics deal at approximately one o'clock in the afternoon.

5. Deputy Sanchez was given the approximate location of the white cargo van ('leaving the residential area heading towards Zaragosa') and told that 'it was possibly loaded with narcotics.'

6. While traveling on Zaragosa, Detective Perales contacted Deputy Sanchez and advised him that the white van was at the intersection of Sombra del Sol and Zaragosa.

7. Deputy Sanchez testified that he saw the van stopped at the intersection at the stop sign.

8. Deputy Sanchez testified that he passed the van going approximately 50 miles per hour and drove 30 yards north on Zaragosa, then turned around and conducted a traffic stop of the van, that was traveling south on Zaragosa, because 'it failed to signal a right turn from that stop.'

9. Deputy Sanchez testified that he passed the Defendant Elias while the Defendant was stationary in a lawful stop and that the Defendant hadn't committed a ticketable offense yet.

10. Deputy Sanchez testified that he did not see the Defendant, Abran Elias ('Elias'), fail to signal intent to turn right from his vantage point as he proceeded 30 yards away on Zaragosa.

The court also made the following conclusions of law:

1.  Deputy Sanchez had no reasonable suspicion or probable cause to believe that Defendant Elias had committed a traffic violation in his presence while Defendant's Elias' vehicle was stopped at the intersection of Sombra del Sol and Zaragosa, in El Paso County, Texas.

2. The Court finds no reasonable suspicion to believe that the traffic violation charged occurred or that Defendant Elias had committed a different traffic

offense that would have supported the traffic stop, specifically, a failure to signal his intention to turn within a hundred feet of the intersection.

3. The subsequent warrantless arrest of Elias and the search of his vehicle, not supported by probable cause or reasonable suspicion of criminal activity, was illegal.

4. The Court further finds that the evidence establishes that the traffic stop of Defendant Elias' van was made as a pretext for the narcotic investigation that was being conducted by the El Paso County Metro Criminal Enterprise Unit of the El Paso County Sheriff's Department on Defendant Elias and other unknown subjects.

5. The evidence seized in Elias' van is suppressed.

Significantly, the trial judge did not make any express finding that she disbelieved any aspect of Sanchez's testimony, including his testimony that Elias' van was not signaling either a left or right turn when Sanchez approached and drove through the intersection. The case is now before us for determination of the issues on remand.

## LEGALITY OF THE INITIAL DETENTION

In its first issue, the State contends that the trial court erred by granting the motion to suppress because Sanchez's traffic stop was supported by at least a reasonable suspicion that Elias had violated Section 545.104 of the Transportation Code by failing to "signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." *See* TEX.TRANSP.CODE ANN. § 545.104(a), (b)(West 2011).

*Standard of Review*

When reviewing a trial court's ruling on a pre-trial motion to suppress, an appellate court is required to afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Elias*, 339 S.W.3d at 673. We afford the same amount of deference to a trial court's ruling on "application of law to fact questions" or "mixed questions of law and

fact" if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id.* An appellate court reviews *de novo* those mixed questions of law and fact which do not turn on an evaluation of credibility and demeanor. *Id.*

Certain presumptions arise when a trial court grants a motion to suppress and does not make any findings of fact and conclusions of law either upon request of the State or of the court's own volition. In such a case, we presume that the trial court implicitly resolved all issues of historical fact and witness credibility in the light most favorable to its ultimate ruling. *Elias*, 339 S.W.3d at 674. Further, we presume that if the State's evidence was uncontradicted and if believed would have supported admission of the evidence sought to be suppressed, the trial court simply chose to disbelieve the uncontradicted testimony. *Id.* The trial court is required, however, to state its essential findings upon the request of the losing party. *Id.* The Court of Criminal Appeals has explained that "essential findings" means "findings of fact and conclusions of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts." *Elias*, 339 S.W.3d at 674, *quoting State v. Cullen*, 195 S.W.3d 696, 699 (Tex.Crim.App. 2006).

*Reasonable Suspicion*

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures at the hands of government officials. *Crain v. State*, 315 S.W.3d 43, 52 (Tex.Crim.App. 2010). Under the Fourth Amendment, a warrantless detention of a suspect that amounts to less than a full-blown custodial arrest must be justified at least by a reasonable suspicion. *Elias*, 339 S.W.3d at 674. A police officer has reasonable suspicion to detain a person if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon

will be engaged in criminal activity. *Elias*, 339 S.W.3d at 674; *Crain*, 315 S.W.3d at 52. This is an objective standard which examines whether there was an objective justification for the detention. *Elias*, 339 S.W.3d at 674. The subjective intent or motive of the detaining officer is disregarded in this analysis. *Id.*

> Section 545.104 of the Transportation Code provides:
>
> (a) An operator shall use the signal authorized by Section 545.106[3] to indicate an intention to turn, change lanes, or start from a parked position.
>
> (b) An operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn.

TEX.TRANSP.CODE ANN. § 545.104. The Court of Criminal Appeals stated in *Elias* that the objective facts supported a reasonable inference that Elias violated Section 545.104(b) of the Transportation Code because Sanchez testified that he was able to see, as he approached Elias's van at the intersection, that there was no turn signal flashing in the moments before Elias made the turn when the van was positioned at the intersection and Elias subsequently made a right turn. *Elias*, 339 S.W.3d at 675. Thus, there is at least a reasonable suspicion that Elias committed a traffic violation which would support the initial detention, that is, he turned right onto Zaragosa without continuously signaling his intent to turn for the last 100 feet before making the turn. The trial court's written fact findings do not address whether the court believed or disbelieved this testimony so the Court of Criminal Appeals remanded the case to this Court with instructions that we require the trial court to make additional findings. *Id.* at 675-76.

In its supplemental findings, the trial court has again failed to address Sanchez's testimony that the van's turn signals were not flashing when he approached the intersection and the court has not made an adverse finding on Sanchez's credibility on this dispositive issue.

---

[3] Section 545.106(a) provides for the use of hand and arm or signal lamp when an operator is required to give a stop or turn signal. TEX.TRANSP.CODE ANN. § 545.106(a).

Given that the trial court has been given an opportunity to clarify whether it disbelieved any aspect of Sanchez's testimony and has chosen not to do so, we conclude that the trial court believed all of Sanchez's testimony and the court did not make any explicit findings on this dispositive issue because it has erroneously regarded the findings as peripheral or non-essential. *See id.* at 675-76.

As the Court stated in *Elias*, the evidence, *w*hen viewed objectively, supports a reasonable inference that Elias violated Section 545.104(b) by failing to continuously signal his intention to turn for the last 100 feet of movement before he turned onto Zaragosa. *Elias*, 339 S.W.3d at 675. Sanchez testified he saw the van stopped at the stop sign and its turn signal was not flashing. He accurately testified that a traffic violation had not occurred at that point because the van had not yet turned. Even if Elias turned on his turn signal after Sanchez cleared the intersection and just before Elias turned onto Zaragosa, he still would have violated Section 545.104(b) because he had not *signaled continuously* for the last 100 feet of movement before he turned. We therefore find that the initial detention is supported by at least a reasonable suspicion that Elias had committed a traffic violation.

*Search Incident to Arrest*

The search of Elias's van took place on September 7, 2007. At that time, an officer who had made a lawful custodial arrest of the occupant of an automobile could, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile. *See New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981); *State v. Gray*, 158 S.W.3d 465, 470 (Tex.Crim.App. 2005). In 2009, the United States Supreme Court decided *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) which clarified the permissible scope of a vehicle search incident to the arrest of a motorist. The Supreme Court

held that police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. *Gant*, 556 U.S. at 351, 129 S.Ct. at 1723. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies. *Gant*, 556 U.S. at 351, 129 S.Ct. at 1723-24.

Citing *Davis v. United States*, --- U.S. ---, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), the State argues that, even assuming that the search was later determined to be unconstitutional under *Arizona v. Gant*,[4] the evidence seized by the law enforcement officers is not subject to the exclusionary rule because the officers conducted the search incident to arrest in objective good faith reliance on then-binding appellate precedent. In *Davis*, the police searched the defendant's vehicle as a search incident to arrest. That search took place in April of 2007 which was two years before the Supreme Court decided *Gant*. *Davis*, --- U.S. ---, 131 S.Ct. at 2425. The Supreme Court held that *Gant's* rule applied retroactively but evidence obtained during a search conducted in reasonable reliance on then-binding precedent is not subject to the exclusionary rule. *Davis*, --- U.S. ---, 131 S.Ct. at 2429.

Although the search of Elias's van was unconstitutional under *Gant*, the police conducted the search in 2007 in good faith reliance on appellate precedent authorizing the search incident to arrest. Accordingly, we conclude that the exclusionary rule does not apply in this case. *See Davis*, --- U.S.---, 131 S.Ct. at 2429. Issue One is sustained. Having determined that the exclusionary rule does not require suppression of the evidence, we will not address the State's alternative argument regarding the attenuation doctrine. The suppression order is reversed and the cause is remanded for trial.

---

[4] *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).

September 26, 2012

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)