

# NUMBER 13-12-00747-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**CRISTOBAL MARTINEZ,**                                                                **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                **Appellee.**

## On appeal from the 24th District Court
## of Refugio County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Perkes
### Memorandum Opinion by Justice Perkes

Appellant Cristobal Martinez appeals his conviction for possession of more than 50 pounds, but less than 2,000 pounds, of marihuana, a second-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(a), (b)(5) (West, Westlaw through 2013 3d C.S.). Pursuant to a plea-bargain agreement, in March 2009, appellant pleaded guilty to possession of between 50 and 2,000 pounds of marihuana. Appellant was placed on

deferred-adjudication community supervision for a period of eight years, sentenced to 400 hours of community service, and fined $2,500. Subsequently, the trial court revoked appellant's community supervision, adjudicated him guilty of the offense, and sentenced appellant to sixteen years of confinement in the Texas Department of Criminal Justice, Institutional Division.

By a single issue on appeal, appellant argues the trial court abused its discretion by revoking his deferred-adjudication community supervision and adjudicating him guilty when the State's evidence was insufficient to prove he possessed marihuana while on community supervision. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The First Marihuana-Smuggling Offense (Original Trial)

On August 24, 2008, Trooper Jacob McEathron of the Texas Department of Public Safety was on patrol in Refugio County, Texas. Trooper McEathron was driving a black, marked patrol car. At approximately four in the morning, just inside the Refugio County line near Victoria County, Trooper McEathron saw a pickup truck parked on the side of U.S. Highway 77. The pickup truck's emergency flashers were activated, so Trooper McEathron decided to stop to offer assistance. When Trooper McEathron activated his patrol-unit lights and started to approach, he saw two men in the ditch alongside the pickup, and a third man emerged from the pickup. The third man was wearing a camouflage top with an American flag on it. The men ran south, jumping over a fence and disappearing into an area of brush.

2

As Trooper McEathron approached the pickup truck, he saw a duffel bag on the ground beside the pickup. As he "cleared" the pickup, he saw two more duffel bags in the back of the cabin, one of which was open with a bundle of marihuana in plain view. Another bundle of marihuana was in plain view on the passenger seat of the pickup truck. In total, there were six bundles of marihuana and three duffel bags.[1] The marihuana was "vacuum packed," and Trooper McEathron could smell the "fresh odor of marihuana" without opening the bundles. A "multi-agency manhunt" ensued.[2] Appellant and one of the other men were apprehended about five hours later, six miles south in Refugio County. Appellant was the individual wearing a camouflage shirt whom Trooper McEathron had seen emerge from the pickup.

As mentioned above, pursuant to a plea-bargain agreement, appellant was placed on deferred-adjudication community supervision for the first marihuana-smuggling offense.

## B.    The Second Marihuana-Smuggling Offense (Revocation)

In August 2012, the State filed a first amended motion to adjudicate guilt and petition to revoke community supervision in which it alleged appellant violated conditions one and two of his community supervision by possessing marihuana on or about April 2, 2010 ("the second marihuana-smuggling offense").[3] At the revocation hearing, defense counsel argued that the second offense involved marihuana bundles that pre-dated the

---

[1]   The gross weight of the marihuana, inclusive of packaging, was 140 pounds.

[2]   Law-enforcement personnel from San Antonio assisted in the manhunt using a helicopter.

[3]   In pertinent part, the first two conditions of appellant's community supervision read as follows: "(1) Commit no offense against the laws of this State or of any other state or of the United States of America; (2) Do not purchase nor have in your possession alcoholic beverages, illegal drugs or narcotics."

3

first offense. Specifically, defense counsel argued that the bundles, which bore appellant's fingerprints, were "stockpiled" and that after appellant was placed on community supervision, someone else smuggled them. Appellant, however, did not testify at the community-supervision revocation hearing, and the record is devoid of any evidence that would support defense counsel's theories. Rather, the pertinent evidence of the second offense adduced at the revocation hearing is summarized below.

On the night of April 2, 2010, Trooper Justin Nixon of the Texas Department of Public Safety was on patrol in Jackson County, Texas. At about 11:30 p.m., while traveling on FM 616, Trooper Nixon saw three vehicles traveling "very closely to each other" in an apparent convoy. Trooper Nixon testified that FM 616 is parallel to US Highway 59 and that while it normally only has light, local traffic, the "road is [also] known for having human smugglers, drug smugglers . . . especially at that time of night." Trooper Nixon described briefly that a convoy formation can be used to distract from illegal smuggling in one vehicle in the formation. After determining that none of the vehicles were registered in Jackson County, Trooper Nixon radioed for backup. Neither the first nor third vehicle nor their occupants were found to be associated with any illegal activity.

Deputy Steve Thompson of the Jackson County Sheriff's Office testified that the three vehicles were traveling "nose and tail together." After the first vehicle broke away, he initiated a traffic stop of the second vehicle, a white pickup truck registered to an owner in the Houston area. The traffic stop occurred on State Highway 172. First, Deputy Thompson had to maneuver around the third vehicle, which nearly stopped right in front

4

of Deputy Thompson's patrol unit in the middle of the road. By this time, the white pickup truck was some distance ahead of the third vehicle and had moved into the shoulder lane, in which it continued to travel northward. After Deputy Thompson activated his patrol-unit lights, the white pickup continued to move very slowly in the shoulder lane for "several hundred" feet. Deputy Thompson suspected the driver was looking for a place to abscond on foot. While the pickup was still moving, the driver abruptly opened his door and ran away, disappearing into "extremely thick" brush. Deputy Thompson described the driver as a Hispanic male, "approximately 5'5", 5'8", [with an] average build." Law enforcement officers were not able to apprehend the male who absconded into the brush. A search of the vehicle revealed two black duffel bags that contained six bundles of marihuana, three bundles per bag.[4]

Betty Steinhauser, a latent-print examiner for the Texas Department of Public Safety in Austin, testified that the outer layer of plastic wrap on each bundle had no fingerprints on it. Steinhauser testified further that on the second layer of plastic wrap, she found eighty-seven of appellant's fingerprints spread over five of the six bundles of marihuana. Steinhauser testified that the wrapping was not such that the bundles could be unwrapped and re-wrapped again in the same wrapping. In her written report, Steinhauser described the bundles as "vacuum packed." Steinhauser found no fingerprints that matched the fingerprints of Innocencio Cruz, the man from the Houston area who reported the pickup truck stolen after the traffic stop.

---

[4] The gross weight of the marihuana, inclusive of packaging, was 65.7 pounds.

Investigator Gary Smejkal of the Jackson County Sheriff's Department's Narcotics Unit testified that he is a peace officer and has been working on narcotics cases since 1980. Investigator Smejkal was not able to link Innocencio Cruz to the marihuana found in the white pickup truck and he was not able to establish any link between appellant and the pickup truck.[5] However, on cross-examination, Investigator Smejkal testified that drug smugglers do not "stockpile" marihuana. Investigator Smejkal explained drug smuggling occurs year-round and drug cartels want to move their inventory as quickly as possible, for the sake of their cash flow.

Linda Howe, appellant's supervision officer in Refugio County, testified that, while on community supervision for the first smuggling offense, appellant first reported that he worked as a construction laborer in Brownsville, Texas; later reported that he worked as a carpenter in the United States; and finally reported he worked as a farmhand in Mexico.[6] Appellant informed her that he did not earn any reportable income in the U.S. Appellant wrote a letter to Howe in English explaining his lack of reportable income in the U.S.[7] That letter was admitted into evidence.

---

[5] There is no evidence in the record concerning fingerprint examination of the white pickup.

[6] Appellant's community-supervision conditions required him to maintain stable employment and to submit a copy of his federal income tax return to his supervision officer annually. During his community-supervision term, appellant obtained permission to live in Cameron County and to report to a supervision officer in Cameron County, though he remained bound by the terms of the Refugio County community supervision. The record reflects a community-supervision officer in Cameron County granted appellant permission to work on a farm in Mexico.

[7] Appellant's letter to Howe was written in English. We note that, according to Howe's testimony, appellant understood English well, though she also read the community-supervision documents to him in Spanish as was her routine practice with Spanish speakers.

After the trial court began receiving evidence at the revocation hearing, defense counsel represented to the trial court that appellant did not understand the English language. The trial court recessed the hearing for over an hour so that an English-Spanish interpreter could be secured. The record

## D.   The Trial Court's Judgment

The trial court found that appellant violated the first two conditions of his community supervision by possessing marihuana.   At the conclusion of the revocation hearing, the trial court revoked appellant's community supervision for the first marihuana-smuggling offense and sentenced him to sixteen years of confinement in the Texas Department of Criminal Justice, Institutional Division.[8]   This appeal followed.

---

reflects the trial court ensured appellant understood the proceedings up to the point when the interpreter began participating in the revocation hearing.

[8]   Defense counsel asked the trial court to enter findings of fact and conclusions of law in support of its ruling.   Although the trial court entered "Findings of Fact and Conclusions of Law," the fact findings pertain only to the procedural history of the case.   The fact findings do not pertain to the facts surrounding appellant's violation of the community-supervision conditions.

In relevant part, the Findings of Fact are as follows:

3.   On November 28, 2012, the Court heard sworn testimony and admitted into evidence documentary and physical evidence offered by the State to support its claim that the defendant had violated Condition Number One (1) and Condition Number Two (2) of his deferred adjudication community supervision.

4.   At the conclusion of the evidence and following the arguments of counsel, the Court found that the violations alleged by the State in its motion were "True," adjudicated the defendant guilty of the second-degree felony of Possession of marihuana, and assessed his punishment at imprisonment in the Texas Department of Criminal Justice for a term of 16 years.

The Trial Court makes the following Conclusions of Law:

1.   The State proved by a preponderance of the evidence that the defendant had violated Condition Number One (1) and Condition Number Two (2) of his community supervision.

2.   The State having met its burden of proof, the Court proceeding to adjudicate the defendant guilty was appropriate.

The record on appeal contains no objection to the trial court's fact findings, and the findings are supported by the record.   The record does not show that appellant requested any specific fact findings in the trial court.   Appellant does not raise any issue concerning the trial court's fact findings on appeal.

In the context of the denial of a defendant's motion to suppress, a trial court has a mandatory duty, upon the defendant's request, to enter specific fact findings that enable a reviewing court to determine how the trial court applied the law to the facts.   *See e.g., State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011).   However, we are aware of no mandatory duty of the trial court to enter specific fact findings in

## II.  STANDARD OF REVIEW

We review a trial court's order revoking community supervision for an abuse of discretion.  *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006) (citing *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984)).  The State bears the burden of showing by a preponderance of the evidence that the defendant committed a violation of his community-supervision conditions.  *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993); *Jones v. State*, 112 S.W.3d 266, 268 (Tex. App.—Corpus Christi 2003, no pet.).  If the State does not meet its burden of proof, the trial court abuses its discretion in revoking the community supervision.  *Cardona*, 665 S.W.2d at 493–94.

Proof by a preponderance of the evidence of any one of the alleged violations of the community-supervision conditions is sufficient to support a revocation order.  *See Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1977); *Herrera v. State*, 951 S.W.2d 197, 199 (Tex. App.—Corpus Christi 1997, no pet.).  The trial court is the trier of facts in a revocation proceeding and is the sole judge of the credibility of the witnesses and the weight to be given to the testimony.  *Canseco v. State*, 199 S.W.3d 437, 439 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).  We examine the record of the revocation proceeding in the light most favorable to the trial court's ruling.  *Id.*

---

support of a revocation order.  A revocation order is reviewed only for whether the trial court abused its discretion in concluding that the State proved a violation of a community-supervision condition by a preponderance of the evidence.  *See e.g., Duncan v. State*, 321 S.W.3d 53, 56–57 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd.); *Canesco v. State*, 199 S.W.3d 437, 439 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd.).  The lack of more specific fact findings does not affect appellant's substantial rights in this case and therefore must be disregarded.  *See* TEX. R. APP. P. 44.2(b).  Further, appellant has not been hindered in the proper presentation of his appellate issue by the lack of more specific fact findings.  *See id.* R. 44.4(a)(1).

## III. ANALYSIS

By his sole issue on appeal, appellant argues the State's fingerprint evidence at the revocation hearing was insufficient to prove that he possessed marihuana while on deferred-adjudication community supervision. Appellant emphasizes there is no direct evidence that he possessed the marihuana on or about on April 2, 2010, particularly because none of the State's witnesses could identify him as an occupant of any of the three vehicles seen travelling together when the marihuana was seized. We disagree.

Appellant's 87 fingerprints on the inside of five of the six marihuana bundles is evidence that he possessed the marihuana, particularly in light of the print examiner's testimony that the marihuana could not have been unwrapped and re-wrapped using the packaging on which appellant's fingerprints appeared.

In addition, Investigator Smejkal testified, based on his training and experience in narcotics investigations, that drug cartels do not store drugs for long periods of time between obtaining them and selling them. Instead, drug cartels move their inventory as quickly as possible for the sake of their cash flow. Investigator Smejkal's testimony is uncontradicted and rebuts appellant's non-evidentiary argument that the marihuana seized on April 2, 2010 may have been bundles that appellant touched prior to the first smuggling offense on August 24, 2008.[9]

---

[9] We note that the April 2, 2010 marihuana-smuggling offense occurred 587 days after the first offense and 373 days after appellant was placed on community supervision for the first offense.

We note further that the State may prove "identity and criminal culpability by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence." *Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009) (citing *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986)). During his 373 days on community supervision, appellant claimed to have three different occupations (construction laborer and carpenter in the United States and farmhand in Mexico), but he claimed he never received a paycheck in the U.S. and had no reportable income for a federal tax return. This is some

The cumulative force of the circumstantial evidence that appellant possessed the marihuana seized on April 2, 2010 was sufficient to prove by a preponderance of the evidence that appellant violated his community-supervision conditions by possessing marihuana. *See Johnson v. State*, 871 S.W.2d 183, 191 (Tex. Crim. App. 1993). On this record, we cannot conclude the trial court abused its discretion in revoking appellant's community supervision and adjudicating him guilty of the first marihuana-smuggling offense. Appellant's sole issue on appeal is overruled.

## IV. CONCLUSION

We affirm the trial court's judgment.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
1st day of May, 2014.

---

evidence that appellant may have continued to earn income from illegal drug smuggling while on community supervision. *See Menefee v. State*, 928 S.W.2d 274, 277 (Tex. App.—Tyler 1996, no pet.) (holding defendant's "possession of a pistol at his business tended to show appellant was a drug dealer").

The similarities between the first and second marihuana-smuggling offenses also tend to inculpate appellant, especially when considered in conjunction with the fingerprint evidence. First, both offenses involved tightly plastic-wrapped, vacuum-packed bundles of marihuana being smuggled overnight in duffel bags. In both instances, the quantity of marihuana was relatively large, exceeding fifty pounds, and a pickup truck was used for transportation. In both instances, a Hispanic male matching appellant's build emerged from the pickup truck and absconded from law enforcement into dense, dark brush.