**Affirm and Opinion Filed January 11, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00329-CR**

**EARNEST DEWAYNE CLAYTON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 1**
**Rockwall County, Texas**
**Trial Court Cause No. CR17-2027**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Garcia
Opinion by Justice Molberg

The trial court found appellant Earnest Dewayne Clayton guilty of a Class B

misdemeanor offense of driving while intoxicated (DWI),[1] sentenced him to sixty

days' confinement in jail and a $250 fine, suspended the imposition of the jail

sentence, and placed him on fifteen months of community supervision, subject to

certain terms and conditions. In four issues, Clayton argues the evidence was

insufficient to sustain his conviction (third issue); the trial court erred by admitting

---

[1] *See* TEX. PENAL CODE § 49.04(a), (b).

and denying his motion to suppress certain evidence (first and second issues); and the trial court erred by failing to file findings of fact and conclusions of law upon his request (fourth issue). Because his fourth issue is now moot and we overrule his other issues, we affirm the trial court's judgment in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## DISCUSSION

### A. Findings of Fact and Conclusions of Law

We begin with Clayton's fourth issue, in which he argues the trial court erred by failing to file findings of fact and conclusions of law upon his request and asks that we remand the case to the trial court for the issuance of such findings and conclusions.

Clayton's complaint and request are now moot. After Clayton filed his brief on appeal, we issued an order that (1) noted Clayton filed a request for findings of fact and conclusions of law and a motion to enter findings of fact and conclusions of law after the trial court denied his motion to suppress, (2) ordered, by a particular date, the trial court to issue findings of fact and conclusions of law and the county clerk to file a supplemental clerk's record containing the trial court's findings, and (3) abated the appeal to allow the trial court to comply with our order.[2]

---

[2] *See State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011); *State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006). In *Elias*, 339 S.W.3d at 674, the court stated, "[U]pon the request of the losing party on a motion to suppress evidence, the trial court shall state its essential findings." *Elias* explained that by "essential findings" the court meant "findings of fact and conclusions of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts," *see*

–2–

The trial court then issued its findings of fact and conclusions of law, and the county clerk filed in our Court a supplemental record including those findings and conclusions. We then reinstated the appeal.

In his brief in our Court, Clayton has not discussed the trial court's specific findings and conclusions, nor has he discussed the effect, if any, their issuance has on his fourth issue.[3] Because his fourth issue raises an error the trial court has corrected, the issue is now moot, and we need not consider it. *See* TEX. R. APP. P. 44.4(b) (stating, in part, that if a trial court's failure or refusal to act prevents the proper presentation of a case to the court of appeals and the trial court can correct its failure to act, the court of appeals "must direct the trial court to correct the error" and "then proceed as if the erroneous action or failure to act had not occurred").

## B. Sufficiency of the Evidence

In his third issue, Clayton argues the evidence, when considered in its totality, is legally insufficient to support his conviction for driving when intoxicated.

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of

---

*id*. (quoting *Cullen*, 195 S.W.3d at 699) and that this requirement "assures that appellate resolution of the suppression issue 'is based on the reality of what happened [at the trial court level] rather than on [appellate] assumptions that may be entirely fictitious'"). *Id*. (quoting *Cullen*, 195 S.W.3d at 698). The findings may be written or stated on the record at the conclusion of the hearing. *See Nadeau v. State*, No. 05-19-01137-CR, 2022 WL 3053917, at *3 (Tex. App.—Dallas Aug. 3, 2022, pet. ref'd) (citing *Cullen*, 195 S.W.3d at 699).

[3] That Clayton did not discuss the trial court's findings and conclusions in his original brief is understandable, as such findings and conclusions had not yet been issued. Once the trial court issued them and we reinstated the appeal, the State made note of the trial court's findings and conclusions in its brief, and Clayton did not file a reply.

fact could have found the essential elements of the offense beyond a reasonable doubt. *Ramjattansingh v. State*, 548 S.W.3d 540, 546 (Tex. Crim. App. 2018) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The factfinder is the sole judge of witness credibility and the weight to be given their testimony. *See Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the factfinder. *Bohannan v. State*, 546 S.W.3d 166, 178 (Tex. Crim. App. 2017). "When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination." *Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *See Brooks v. State*, 323 S.W.3d 893, 922 (Tex. Crim. App. 2010).

In conducting our review, we consider "all evidence in the record of the trial, whether it was admissible or inadmissible." *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013) (citations omitted); *see Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006) ("[A] reviewing court is permitted to consider all evidence in the trial-court record, whether admissible or inadmissible, when making a legal-sufficiency determination."). Thus, regardless of whether the evidence Clayton challenges in his first and second issues was properly admitted, such evidence is properly considered in a review of the sufficiency of the evidence. *Winfrey*, 393 S.W.3d at 767.

–4–

"A person commits Class B misdemeanor DWI if the person is intoxicated while operating a motor vehicle in a public place." *Ramjattansingh*, 548 S.W.3d at 546 (citing TEX. PENAL CODE § 49.04(a), (b)). "'Intoxicated' means either 'not having the normal use of mental or physical faculties' by reason of 'the introduction of alcohol' (or 'any other substance') into the body, or 'having an alcohol concentration of 0.08 or more.'" *Id.* (citing TEX. PENAL CODE § 49.01(2)(A), (B)).

*Ramjattansingh* states:

> In order to prove the offense of driving while intoxicated, the State must prove that the defendant operated a motor vehicle while intoxicated. If the State intends to rely upon the *per se* definition of intoxication, it must prove that the defendant had an alcohol concentration of at least .08 at the time of driving. If the State does not intend to rely upon that definition of intoxication, it need only prove intoxication at the time of driving by showing that the defendant had experienced a loss of the normal use of his or her mental or physical faculties.

548 S.W.3d at 548 (internal footnotes omitted). Also, as to its statement regarding the State's reliance on the *per se* definition of intoxication, the court stated:

> This is not to suggest that the State is required to introduce retrograde extrapolation testimony to prove its case. The State is only required to prove that a defendant was intoxicated at the time of driving. Evidence of a particular blood alcohol level may be relevant regardless of whether there is retrograde extrapolation testimony. *Stewart v. State*, 129 S.W.3d 93, 97 (Tex. Crim. App. 2004). Breath or blood test results can be relied upon, even without retrograde extrapolation testimony, along with other evidence of intoxication to determine whether a particular defendant was intoxicated, as the term is defined, at the time of driving. *Id.*

*Id.* at 548 n.29. Finally, the court stated, "[T]he different definitions of intoxication are purely evidentiary matters; they are not 'elements' of the offense of driving while

–5–

intoxicated" and "[t]he State is not required to allege a particular definition of intoxication in the charging instrument that it intends to rely on in trial." *Id*. at 548 n.30 (citing *State v. Barbernell*, 257 S.W.3d 248, 256 (Tex. Crim. App. 2008)).

Clayton maintains the evidence is legally insufficient to support his conviction for driving when intoxicated. He does not cite to specific evidence in discussing this issue, but as support, he maintains that there was no indication he drove off the road or failed to maintain a single lane and claims the arresting officer lacked notes to conclude Clayton had "failed" the walk-and-turn test, there were insufficient clues to conclude he "failed" the horizontal gaze nystagmus (HGN) test, and his alcohol level "well could have been less than .08" when considering the margin of error.

But Clayton's description of the record ignores much of the evidence within it. The trial court issued twenty-eight findings of fact that are supported by that evidence, which include, among other things, the details to which we refer below.

On July 23, 2017, Deputy Jeffrey Walls was working in his capacity as a peace officer for the Rockwall County Sheriff s Department. Around 2:40 a.m., on the north service road of Interstate 30—a public place—Deputy Walls observed a motor vehicle traveling approximately 60 miles per hour in a 45 miles-per-hour zone. Deputy Walls observed and "paced" the subject, and after initiating a traffic stop, Deputy Walls made contact with the operator of the motor vehicle and identified the driver, by his driver's license, as Clayton.

Upon making contact with Clayton, Deputy Walls could smell the strong odor of an alcoholic beverage coming from his breath. After asking Clayton if he had been drinking that night and the admission that he had,[4] Deputy Walls decided to perform standardized field sobriety tests. After completing the tests, Deputy Walls opined that Clayton had lost the use of his mental or physical faculties due to the introduction of alcohol into his system, and Deputy Walls again asked Clayton how much he had been drinking, to which Clayton responded that he "had two glasses about an hour ago." Deputy Walls placed Clayton under arrest for driving while intoxicated, read Clayton the "DIC-24 statutory paperwork," and asked Clayton for a sample of his blood, which Clayton agreed to provide.

Deputy Walls took Clayton to a nearby hospital to complete a blood draw. The blood draw was done by a registered nurse, who placed two vials of Clayton's blood in tubes with anticoagulating agent and turned the tubes over and over eight times to ensure the blood mixed with the anticoagulating agent. Upon completion of the blood draw, Deputy Walls packaged the vials and put them into a blood kit in the refrigerated locker at the Rockwall County Sheriff s Office, where the blood kit was stored until it was taken to the laboratory for testing as evidence. Kristal Rios, the evidence custodian at the Sheriff's Office, took the blood kit evidence to the

---

[4] While the trial court's findings of fact did not specify the substance that Clayton stated he had been drinking, in the videos from Deputy Walls' body camera and in-car camera that were admitted into evidence at trial, when Deputy Walls first questioned Clayton after stopping him, Clayton told Deputy Walls he had "wine" "about an hour or two ago."

Garland, Texas lab of the Department of Public Safety (DPS) on July 27, 2017, later retrieved it from the DPS lab in 2017, and it remained in the Sheriff's office until January 15, 2020, when it was sent again to the DPS lab.

On January 16, 2020, Heidi Christensen, the head analyst at the lab of the Southwestern Institute of Forensic Sciences ("SWIFS"), received the blood kit evidence. She was aware she was retesting the blood at the request of the defense attorney. Christensen tested both of the vials, and the toxicology analysis test reports measured .088 grams of ethanol per 100 milliliters of blood and .088 grams of ethanol per 100 milliliters of blood after that testing.

Rios received the blood kit evidence from the SWIFS lab on January 20, 2020.

In its findings of fact, the trial court stated that it found the testimony of Deputy Walls, Rios, and Christensen to be credible, and in its final conclusion of law, the trial court concluded the evidence was sufficient to establish the elements of the misdemeanor offense of driving while intoxicated beyond a reasonable doubt.

Considering, as we must, all of the evidence in the light most favorable to the verdict, *see Jackson*, 443 U.S. at 319; *Ramjattansingh*, 548 S.W.3d at 546, we conclude a rational fact-finder could have found, beyond a reasonable doubt, that Clayton operated a motor vehicle in a public place while intoxicated.

Accordingly, we overrule Clayton's third issue.

–8–

**C. Admission of Evidence and Denial of Motion to Suppress**

Finally, we consider Clayton's first and second issues, which concern the trial court's alleged error in (1) admitting certain evidence and (2) denying Clayton's motion to suppress. We will consider his second issue first.

### 1. Motion to Suppress

In his second issue, Clayton argues the trial court erred in "denying his motion to suppress the evidence of his detention and all evidence flowing therefrom."

Clayton's written pretrial motion to suppress argued "[n]o probable cause existed for the stop, the search and arrest for DWI." The trial court carried the motion with the trial, denied the motion at the close of evidence, found Clayton guilty of the offense as charged, and entered its "Original Order Granting Community Supervision Judgment & Sentence[,]" which found him guilty, sentenced him to sixty days' confinement in jail and a $250 fine, suspended the imposition of the jail sentence, and placed him on fifteen months of community supervision, subject to certain terms and conditions.

The trial court did not issue findings of fact and conclusions of law before Clayton appealed, but after Clayton's appeal and our order abating it, the trial court entered findings of fact and conclusions of law, many of which concern the motion to suppress.[5] Because Clayton's appeal brief had already been filed at that point, his

---

[5] These include findings of fact one through ten and conclusions of law one through seven, but we do not repeat them verbatim here.

brief did not refer to the trial court's findings or conclusions, which had not yet been issued. Although Clayton did not address the trial court's findings and conclusions in any filing in our Court after they were issued, considering Clayton's complaint on appeal[6] and the unique procedural circumstances present here, we will assume for purposes of this appeal that Clayton challenged both.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, where fact findings are reviewed for abuse of discretion and applications of law are reviewed de novo. *State v. Ruiz*, 581 S.W.3d 782, 785 (Tex. Crim. App. 2019); *see State* v. *Staton,* 599 S.W.3d 614, 616 (Tex. App.—Dallas 2020, no pet.) (citing *Ruiz* and stating, "Almost total deference is given to the trial court's determination of historical facts and the application of the law to the facts is reviewed de novo."). We view the record in the light most favorable to the trial court's ruling and uphold the ruling if it is supported by the record and is correct under any theory of the law applicable to the case. *Staton*, 599 S.W.3d at 616 (citing *Ruiz*, 581 S.W.3d at 785).

We conclude the trial court's findings of fact are supported by the record and conclude the trial court correctly applied the law to those facts. *See Warren v. State*,

---

[6] On appeal, Clayton acknowledges that Deputy Walls testified that he observed Clayton speeding but argues, "Nevertheless, he could not establish that his speedometer was properly calibrated, nor was he sure about the closing distance speed" and did not know the distance he drove to catch up with Clayton. He claims that based on these "deficiencies, [Deputy Walls'] testimony was insufficient to establish either probable cause or reasonable suspicion for the detention" and "[t]he trial court erred in denying [his] motion to suppress."

–10–

No. 05-08-01431-CR, 2009 WL 3467013 (Tex. App.—Dallas Oct. 29, 2009, no pet.) (not designated for publication).[7]

We overrule Clayton's second issue.

## 2. Admission of Evidence

In his first issue, Clayton argues the required chain of custody was not established for—and that the trial court thus erred in admitting—State's Exhibits 28 and 29, which consisted of two separate, one-page "Toxicology Test Analysis Report[s]" signed by Christensen and another SWIFS employee. Both reports were addressed to Clayton's trial counsel, were dated January 24, 2020, referenced Clayton, and identified two gray-top tubes received from the Rockwall County Sheriff's Office as "001-001" and "001-002." Also, each report contained information purporting to reflect the level of ethanol contained in the blood within one of the two tubes.

Among other information, State's Exhibit 28 included a "SWIFS case number" of "IFS-20-00989-0001" and stated:

Blood

Legal Alcohols (GC)
ethanol: 0.088 +/-0.012 g/100mL (Item# 001-001)

---

[7] The trial court cited *Warren* and other cases in its conclusions of law regarding the motion to suppress.

State's Exhibit 29 stated almost identical information, except that, in addition to a

different SWIFS case number,[8] it stated, after "ethanol:" "0.085 +/-0.012 g/100mL

(Item# 001-002)." The trial court admitted both reports over Clayton's objection[9]

<hr>

[8] Exhibit 29 referred to SWIFS case number "IFS-20-00989-0002[.]"

[9] When the State called Christensen to testify, Clayton's counsel raised an objection regarding the chain of custody of the blood. The trial record reflects the following:

> [PROSECUTOR]: The State calls Heidi Christensen.
>
> [CLAYTON'S COUNSEL]: Judge, before we do that, I think I would make an objection—
>
> THE COURT: Okay.
>
> [CLAYTON'S COUNSEL]: – that this is an incomplete chain of custody on this blood. And I'm not sure how we can rely upon this as being admissible or relevant because of the missing pieces of the chain and what happened to the blood. In other words, I can – I can gather that some blood was taken and booked into the Rockwall jail, but not whose blood, when, how, where, conditions that would make it admissible. And then in addition to that, the blood's gone not once but – it's going to be at least two times, and then it – we don't even know how it got from one place to the other then it came back from another place. So I don't think there's a proper chain to get to its admissibility.
>
> THE COURT: Any response?
>
> [PROSECUTOR]: Your Honor, we do have the first person to touch the blood kit and the last person to touch the blood kit. The officer testified that they went to the hospital after [Clayton] consented to a blood draw. He personally left it in evidence. Ms. Rios has testified that she took it from evidence. And while she did submit it to DPS Garland twice, she received it back. She's verified that it is the same box, the same bar code, the same case. And we have the blood kit here today.
>
> THE COURT: All right. I'll overrule the objection although your objection will go to credibility as opposed to admissibility at this point in time.

Clayton's counsel again objected during Christensen's direct examination, after conducting a brief voir dire of Christensen in order to clarify his objection. In that voir dire, after Christensen agreed Clayton's counsel was the person who had requested the testing, she denied knowing anything about the origination of the blood before it got to her and testified that it was received by FedEx on January 16, 2020. The following exchanges then occurred, first between Clayton's counsel and Christensen, and then between Clayton's counsel and the trial court:

> Q. Okay. There are things that can happen to blood in its trajectory or course before it gets to you, over the course of four years, that might affect what you're analyzing, correct?
>
> A. Possibly, yes.
>
> Q. Like maybe even whose blood it is you're analyzing?
>
> A. Yeah, I'm not sure.
>
> Q. Got it. Okay.

after the motion to suppress was first raised in trial.[10]  Both reports reflected the same

blood alcohol concentration scores Christensen testified about in trial.[11]

[CLAYTON'S COUNSEL]:  That's our objection, Judge.

THE COURT: All right.  Overruled at this time. . . . And 28 and 29 are admitted.

Later, the trial court stated, in its eighth conclusion of law:

During trial, Clayton's objection(s) that the State had failed to establish the proper chain of custody (from the Sheriff's Office to the "SWIFS" lab) went to the weight of the evidence rather than its admissibility.  *See Bird v. State*, 692 S.W.2d 65, 70 (Tex. Crim. App. 1985).  On that basis, this Court concluded that Clayton's objection(s) should be denied.

[10] While Clayton's counsel had already indicated he did not object to State's Exhibit 1—a video of Clayton's stop and arrest from a dashcam inside Officer Walls' vehicle—after the video was admitted, Clayton's counsel raised and discussed with the trial court the pretrial motion to suppress:

[CLAYTON'S COUNSEL]:  Judge, if we may, we have a motion to suppress that was on file, I don't know how many years ago.

THE COURT:  Okay.

[CLAYTON'S COUNSEL]:  Should we just run it with the trial?

THE COURT:  Yeah, let's just run it at the same time during your cross-examination, and then you can make a motion.

[CLAYTON'S COUNSEL]:  As opposed to breaking it up?  I mean, what if we won the motion to suppress?

THE COURT:  Well, then that will change everything, but the suppression can – is it based on the stop?

[CLAYTON'S COUNSEL]:  Yes.

THE COURT:  Okay.  Then let them go through their things and then go through cross.

[CLAYTON'S COUNSEL]:  We'll just do it on cross.

THE COURT:  Okay.

[11] Christensen testified:

Q. So going back to the chain of custody, did your – did SWIFS receive the blood kit from the Rockwall Sheriff's Office or did they return it to the Rockwall Sheriff's Office?

A. According to our – my chain of custody here, it says it was received from Rockwall County Sheriff's Office and also returned to Rockwall County Sheriff's Office.

Q. And what were [Clayton's] blood alcohol concentration scores as recorded on those reports?

A. The result for the – for request 1, the IFS-20-00989-0001, I measured a 0.088 grams of ethanol 23 per 100 milliliters of blood.  And for the IFS-20-00989-0002, I measured a 0.085 grams of ethanol per 100 milliliters of blood.

–13–

We review a trial court's decision to admit or exclude evidence for abuse of discretion.  *See Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018); *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018).  A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Beham*, 559 S.W.3d at 478; *Gonzalez*, 544 S.W.3d at 370.

In *Simmons v. State*, No. 05-11-01267-CR, 2013 WL 1614114, at *6 (Tex. App.—Dallas Feb. 20, 2013) (mem. op., not designated for publication), we stated:

> A chain of custody is sufficiently authenticated when the State establishes the beginning and the end of the chain, particularly when the chain ends at a laboratory.  *Martinez v. State*, 186 S.W.3d 59, 62 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).  Absent proof of tampering, most problems with the chain of custody do not affect the admissibility of evidence, but rather go to the weight of the evidence. *Lagrone v. State*, 942 S.W.2d 602, 617 (Tex. Crim. App. 1997).  The State need only prove the beginning and end of the chain of custody; it is not required to show a moment-by-moment account of the location of evidence from the time of seizure.  *Shaw v. State*, 329 S.W.3d 645, 654 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

Clayton acknowledges these standards but argues in his first issue that the trial court erred in admitting State's Exhibits 28 and 29 because (1) the State's assertion that it established both the beginning and the end of the chain of custody "misses the mark" when Deputy Walls "did not . . . perform the [blood] draw himself [and] [n]o one from the hospital testified concerning the manner in which the blood was drawn[,]" and (2) according to Clayton, the State failed to establish the blood was

–14–

drawn in accordance with Texas Transportation Code section 724.017(a).[12] Contrary to Clayton's implication, nothing in section 724.017(a) indicates the person who drew the blood must testify about the blood draw, *see* TEX. TRANSP. CODE 724.017(a), and, in any event, Clayton did not raise this argument below.

We overrule Clayton's first issue because the record contains no evidence of tampering or impropriety, which sufficiently authenticated the blood draw evidence,[13] and because we conclude the admission of State's Exhibits 28 and 29 was within the zone of reasonable disagreement and was thus not an abuse of discretion. *See Beham*, 559 S.W.3d at 478; *Gonzalez*, 544 S.W.3d at 370.

---

[12] *See* TEX. TRANSP. CODE § 724.017(a). Section 724.017(a) states:

> Only the following may take a blood specimen at the request or order of a peace officer under this chapter:
>
> (1) a physician;
>
> (2) a qualified technician;
>
> (3) a registered professional nurse;
>
> (4) a licensed vocational nurse; or
>
> (5) a licensed or certified emergency medical technician-intermediate or emergency medical technician-paramedic authorized to take a blood specimen under Subsection (c).

*See* TEX. TRANSP. CODE § 724.017(a). Deputy Walls testified that he took Clayton to a nearby hospital to complete a blood draw. When asked if he could walk through the procedure "of that blood draw," Deputy Walls answered "Yes" and then stated, "You transport them to the hospital. You make contact with the hospital staff there. A registered nurse will come out and withdraw you two vials of the defendant's blood and place them within two gray top tubes that they have anticoagulating agent. And we check to make sure that the nurse turns the tubes over, over eight times to ensure that the blood mixes the anticoagulating agent. Afterwards, they're packaged and then put into evidence at the Rockwall County Sheriff's Office."

[13] *See Lagrone*, 942 S.W.2d at 617 ("Without evidence of tampering, most questions concerning care and custody of a substance go to the weight attached, not the admissibility, of the evidence.") (citations omitted); *see also Shaw*, 329 S.W.3d at 654 (rejecting a defendant's argument that a trial court erred in admitting certain evidence when the record contained evidence of the beginning, middle, and end of the chain of custody and defendant had not shown any evidence of tampering or impropriety); *Martinez*, 186 S.W.3d at 62 ("The authentication requirement for admissibility is met once the State has shown the beginning and the end of the chain of custody, particularly when the chain ends at a laboratory.").

## CONCLUSION

We affirm the trial court's judgment.

/Ken Molberg/
KEN MOLBERG
JUSTICE

210329f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

EARNEST DEWAYNE CLAYTON,
Appellant

No. 05-21-00329-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 1, Rockwall County, Texas
Trial Court Cause No. CR17-2027.
Opinion delivered by Justice Molberg. Justices Reichek and Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 11th day of January, 2023.